Opinion for the Court filed by Circuit Judge SENTELLE.
Concurring opinion filed by Senior Circuit Judge WILLIAMS.
Dissenting opinion filed by Circuit Judge TATEL.
SENTELLE, Circuit Judge.
A group of cigarette manufacturers and related entities (“Appellants”) appeal from a decision of the District Court denying summary judgment as to the Government’s claim for disgorgement under the Racketeer Influenced and Corrupt Organizations Act (“RICO” or “the Act”), 18 U.S.C. §§ 1961-68. The relevant section of RICO, 18 U.S.C. § 1964(a), provides the District Courts jurisdiction only for forward-looking remedies that prevent and restrain violations of the Act. Because disgorgement, a remedy aimed at past violations, does not so prevent or restrain, we reverse the decision below and grant partial summary judgment for the Appellants.
I. Background
In 1999 the United States brought this claim against appellant cigarette manufacturers and research organizations,' claiming that they engaged in a fraudulent pattern of covering up the dangers of tobacco use and marketing to minors. The Government sought damages under the Medical Care Recovery Act (“MCRA”), 42 U.S.C. §§ 2651-53, and the Medicare Secondary Payer (“MSP”) provisions of the Social Security Act, 42 U.S.C. § 1395y to recover health-care related costs Appellants allegedly caused. The United States also claimed that Appellants engaged in a criminal enterprise to effect this cover-up, and sought equitable relief under RICO, including injunctive relief and disgorgement of proceeds from Appellants’ allegedly unlawful activities. The Government sought this relief under 18 U.S.C. § 1964(a), which gives the District Court jurisdiction
to prevent and restrain violations of [RICO] by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; of ordering dissolution or reorganization of any enterprise ....
18 U.S.C. § 1964(a).
■ Appellants moved to dismiss the complaint in 2000. The District Court did dismiss the MCRA and MSP claims, but allowed the RICO claim to stand. United States v. Philip Morris, Inc., 116 F.Supp.2d 131, 134 (D.D.C.2000).
Section 1964(a) conferred jurisdiction on the District Court only to enter orders “to prevent and restrain violations of the statute.” In considering whether disgorgement came within this jurisdictional grant, the court relied on a decision of the Second Circuit, the only circuit then to have considered “whether ... disgorgements ... are designed to ‘prevent and restrain’ future conduct rather than to punish past conduct.” United States v. Carson, 52 F.3d 1173, 1182 (2d Cir.1995) (emphasis in original). After noting that “RICO has a broad purpose [and] the legislative history of § 1964-indicates that the equitable relief available under RICO is intended to be ‘broad enough to do all that is necessary,’ ” id. at 1181, the Carson court went on to observe that, it did not see how it could “serve[ ] any civil RICO purpose to order disgorgement of gains ill-gotten long ago ....” Id. at 1882. The portion of Carson relied upon by the District Court in the present controversy suggested that disgorgement might “serve the goal of ‘pre *1193 venting and restraining’ future violations,” but flatly held that the remedy would, not do so “unless there is a finding that the gains are being used to fund or promote the illegal conduct, or constitute capital available for that purpose.” [1] Id. at 1182. The Second Circuit went on to caution that disgorgement would be better justified under this analysis where the “gains [were] ill-gotten relatively recently.” Id. The District Court accepted the Second Circuit’s suggested holding that the appropriateness of disgorgement depends on whether the proceeds are available for the continuing of the criminal enterprise, but ruled that the question was premature, and denied the motion for dismissal on the RICO-disgorgement claim. Philip Morris, 116 F.Supp.2d at 151-52. Neither party sought leave to file an interlocutory appeal of that ruling. '
The case proceeded, and the Government sought disgorgement of $280 billion that it traced to proceeds from Appellants’ cigarette sales to the “youth addicted population” between 1971 and 2001. This population includes all smokers who became addicted before the age of 21, as measured by those who were smoking at least 5 cigarettes a day at that age.
After discovery, Appellants moved for summary judgment on the disgorgement claim arguing that (1) disgorgement is not an available remedy under § 1964(a), (2) even if disgorgement were available, the Government’s model fails the Carson test for permissible disgorgement that will “prevent and restrain” future violations, and (3) even if disgorgement were available, the Government’s proposed model is impermissible because it includes both legally and illegally obtained profits in violation of SEC v. First City Financial Corp., 890 F.2d 1215 (D.C.Cir.1989). The District Court denied this motion in a memorandum order designated “# 550.” United States v. Philip Morris USA, Inc., 321 F.Supp.2d 72 (D.D.C.2004). On motion of the defendants, the District Court certified Order # 550 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). That section provides for interlocutory appeal where a district judge has certified that “an order not otherwise appealable ... involves a controlling question of law as to which there is substantial ground for difference of' opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation ....” Under § 1292(b), the Court of Appeals may then decide whether to permit the appeal to be taken from such order. In the present case, we allowed the appeal.
II. Analysis

A. Scope of Review

At the outset, the Government urges that our review should be limited to the narrow question of whether the disgorgement it seeks is consistent with the standards of Carson, not whether disgorgement vel non is an available remedy under civil RICO. The Government bases this argument on the theo *1194 ry that the order on appeal-that is the memorandum order denying “defendants’ motion for partial summary judgment dismissing the Government’s disgorgement. claim”-was reiterating a prior order on the general question of availability of disgorgement Further, the Government argues, the order spoke anew only to the measure of disgorgement, assuming such disgorgement to be otherwise available. In support of its proposed limitation of our review, the Government relies upon Yamaha Motor Corp., USA v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). In Yamaha, the Supreme Court dealt with the breadth of review properly conducted by a court of appeals under 28 U.S.C. § 1292(b). Id. at . 204, 116 S.Ct. 619. The Government selectively quotes from Yamaha the sentence that, “The court of appeals may not reach beyond the certified order to address others made in the case.” Id. at 205, 116 S.Ct. 619. Based on this sentence, the Government then argues that because the first order denying a motion to dismiss had dealt with the question of the availability of disgorgement, this certified interlocutory review of the subsequent summary judgment order is restricted to the new theory considered by the court on that occasion-that the disgorgement the Government pursued exceeded the standard available for such disgorgement as set by the Second Circuit in Carson.
Unfortunately for the Government’s position, the Yamaha opinion did not end with the sentence upon which the Government relies. The Supreme Court went on to say in the same paragraph: “But the appellate court may address any issue fairly included within the certified order because ‘it is the order that is appealable, and not the controlling question identified by - the district court.’ ” Id. (emphasis in original) (quoting 9 J. Moore & B. Waud, Moore’s Federal Practice § 110.25[1] at 300 (2d ed.1995) and citing 16 C. Wright, A. Miller, E. Cooper, & E. Greshman, Federal Practice & Procedure § 3929 at 144-45 (1977)). Appellants’ motion below was for “Summary Judgment Dismissing the Government’s Disgorgement Claim,” and granting this motion, would have resulted in complete dismissal of the Government’s claim for disgorgement with prejudice. See Appellee’s App. at 19, 79. Thus the District Court’s denial was on the question. of whether disgorgement would be allowed at all, and we may review it as such regardless of the grounds the District Court gave for its decision. In the memorandum accompanying its denial of this motion,- evidencing an accurate understanding of the summary judgment standard provided by Rule 56 of the Federal Rules of Civil Procedure, the District Court noted that “summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving -party is entitled to judgment as a matter of law.” Philip Morris, 321 F.Supp.2d at 74 (citing Fed. R. Civ. P. 56(c)). Significantly, the court further noted that “Defendants argue that any disgorgement which might be ordered upon a finding of liability must be limited by both the text of Section 1961(a) itself and the holding in United States v. Carson ... interpreting that section.” Philip Morris, 321 F.Supp.2d at 74 (emphasis added). Thus the court clearly implied the possibility that none might be ordered, and that statutory issues outside Carson were before the court.
Our dissenting colleague argues that the availability of the disgorgement claim vel non is not before us because *1195 Appellants did not fully restate their earlier arguments in their motion, but only expressed their reservation in a footnote referencing the District Court’s prior rejection of their position. While it is true, as our colleague reminds us, that we have held that a “litigant does not properly raise an issue by addressing it in a ‘cursory fashion,’ with only ‘bare-bones arguments,’ ” Cement Kiln Recycling Coalition v. ERA 255 F.3d 855, 869 (D.C.Cir.2001) (per curiam), our prior holdings on that subject have been in very different contexts. In Cement Kiln, for example, and in Wash. Legal Clinic for the Homeless v. Barry, 107 F.3d 32, 39 (D.C.Cir.1997), relied upon by the dissent, we were determining whether an issue was properly before us that had been raised in no other fashion. In the present case, we are reviewing a summary judgment decision, presumably according to the standards set forth by the Supreme Court in such decisions as Yamaha, and the issue in question was clearly decided by the District Court in the first rejection of the motion to dismiss. The issue was called to the attention of the court as a necessary antecedent in the second summary judgment order, now under direct review, and expressly pointed out in the footnote which our colleague disdains. Furthermore, the motion leading to the order presently before us sought summary judgment of dismissal of the disgorgement claim, not simply a limitation to such disgorgement as might have been supported by the Carson test or other factors. Given the Supreme Court’s plain teaching in Yamaha, particularly its adoption from a learned treatise of the language “it is the order that is appealable, and not the controlling question identified by the district court,” Yamaha, 516 U.S. at 205, 116 S.Ct. 619 (see other authorities, swpra), Cement Kiln and Barry have no applicability. Yamaha controls. We therefore proceed to review the denial of summary judgment, under the usually applicable standards, not simply the sole question to which the Appellees and the dissent would restrict us.
Our dissenting colleague suggests that we are limited by “our general policy of declining to consider arguments not made to the district court in the motion leading to the order under appeal.” Dissent at 1211. We know of no such “general policy” that the particular issue addressed has to have been raised in the particular motion. Rather, we understand our general policy to be following the instructions of the Supreme Court that we are to “address any issue fairly included within the certified order.” Yamaha, 516 U.S. at 205, 116 S.Ct. 619. Insofar as our colleague’s differing understanding rests on United States v. British Am. Tobacco (Invs.) Ltd., 387 F.3d 884, 892 (D.C.Cir.2004) (citing United States v. Hylton, 294 F.3d 130, 135-36 (D.C.Cir.2002)), cited by Dissent at 1213, we do not read that case as supporting a general policy that limits consideration to those arguments raised in the particular motion leading to the certified order, as opposed to being “fairly included” within that order, or even to address the point.' The court in British American Tobacco held only that an intervenor that had raised a privilege issue with respect to an entire collection of documents at one stage of the litigation, but that failed to participate at all in later proceedings focused on one of the documents, despite having notice, had not adequately preserved its objection as to that single document. 387 F.3d at 887-88. It had nothing to do with the scope of review on an interlocutory appeal under § 1292(b). Neither it nor Hylton dealt in any fashion with the breadth of interlocutory review, nor was establishing any standard for the papers in which an argument must have been raised. Each rejected an attempt by *1196 an appellant to raise a new ground for the first time on appeal. Appellants before us raised and preserved their argument as set forth in the text above. We read nothing in British American Tobacco or Hyl-ton to suggest a general policy barring our review under the Yamaha standard.
We find .no history of such a general pplicy that would bar us from considering questions logically antecedent and essential to the order under review. Especially is this so given the Supreme Court’s instructions in Yamaha that we are to “address any issue fairly included within, the certified order.” That must include at least issues that are logically interwoven with the explicitly identified issue and which were properly presented by the appellant. Even ignoring the apparent allusion to the broader issue of summary judgment preserved in the caption of the motion, the relief sought, and the footnote provided above, it is difficult to see how we could establish such a policy that would cause us to affirm a decision denying summary judgment when a ground compelling its grant is fairly encompassed within the order. Our colleague’s interpretation of general policy would seem to compel us to return for trial a case before us for review of a denial of summary judgment, no matter how plain the absence of substantial question of material fact, on the grounds fhat the denial of summary judgment had been based on rejection of some other reasoning in a previous motion, even though the trial court had earlier erred in denying the first motion to dismiss-even when the appellant had called that denial to the court’s attention in the caption of its motion, and a proposed order accompanying the second motion.
Our dissenting colleague finds in Yamaha support for the proposition that “the only issues ‘fairly included’ within a certified order are those decided in the district court’s accompanying memorandum .... ” Dissent at 1213. We understand the law to be, as suggested in Yamaha, that issues are not decided in memoranda at all, but rather in orders. Therefore, consistent with Yamaha, we review orders, not mem-oranda. Our colleague asserts that in Yamaha the Court- “found ‘fairly included’ an issue that ■ the district court had resolved in the same opinion in which it decided the issue identified as the controlling question of law.” Dissent at 1213. While this may , well be the case, the Supreme Court not only did not stress that circumstance, it did not even mention it. Indeed, we note that our colleague had to repair to the unpublished opinion of the District Court to discover the truth of his proposition. We seriously doubt that the Supreme Court intended to establish a precedent that difficult to discover, let alone apply.
Nothing in United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), is to the contrary. The passage relied upon by our dissenting colleague to the effect that courts considering interlocutory appeals under § 1292(b) should “not consider matters that were ruled upon in other orders,” id. at 677, 107 S.Ct. 3054, did not address a situation like the one before us. Here the order appealed from reiterated, and totally depended upon, an issue fairly encompassed within the motion before that court and the order now before us. In Stanley, the court of appeals undertook interlocutory review-of an order dealing with one claim of a multi-claim complaint. In that order, the district court had refused to dismiss a claim asserted under the authority of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). On appeal, the court of appeals not only affirmed the district court’s conclusion as to the Bivens claim, but reached back in the record to order the district court to *1197 reinstate another claim for relief asserted under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. In the present case, the disputed “prior order” had denied judgment of dismissal on the disgorgement claim. The order concededly before us denied judgment of dismissal on the same disgorgement claim. We see nothing in Stanley inconsistent with the later instruction in Yamaha recognizing our jurisdiction to “address any issue fairly included within the certified order.” Yamaha, 516 U.S. at 205, 116 S.Ct. 619. We therefore proceed, obedient to our understanding of Yamaha, to review the order before us denying summary judgment.
We review an order denying summary judgment de novo. Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1031 (D.C.Cir.2004). Obedient to Yamaha, we will review Order # 550 denying summary judgment applying anew the standards of Rule 56, and will not simply review that part of the District Court’s thinking directed to the applicability of the Carson standard or the consistency of the Government’s proffers with that standard. Therefore, we must address the issue, logically prior to the Carson question, of whether disgorgement is available at all. We hold that the language of § 1964(a) and the comprehensive remedial scheme of RICO preclude disgorgement as a possible remedy in this ease.

B. The Availability of Disgorgement

The Government argues that § 1964 contains a grant of equitable jurisdiction that must be read broadly to permit disgorgement in light of Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), and its progeny. The Porter Court considered reimbursement awards under the Emergency Price Control Act of 1942 (“EPCA”) and concluded that where a statute grants general equitable jurisdiction to a court, “all the inherent equitable powers ... are available for the proper and complete exercise of that jurisdiction.” Porter, 328 U.S. at 398, 66 S.Ct. 1086. This grant is only to be limited when “a statute in so many words, or by a necessary and inescapable inference, restricts the court’s jurisdiction.” Id. In this case the text and structure of the statute provide just such a restriction.
As the Supreme Court has repeatedly observed: “Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.” Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). Reading Porter in light of this limited jurisdiction we must not take it as a license to arrogate to ourselves unlimited equitable power. We will not expand upon our equitable jurisdiction if, as here, we are restricted by the statutory language, but may only assume broad equitable powers when the statutory or Constitutional grant of power is equally broad.
As our dissenting colleague correctly notes, the Court in Porter was considering whether a district court acting under the authority granted in the EPCA had the authority to order restitution for overcharges. The implication of broad equitable authority in Porter came from a statute which empowered the district court to grant “a permanent or temporary injunction, restraining order, or other order.” EPCA § 205(a), 56 Stat. 23, 33 (1942). The action before the Court in Porter was brought under a section providing that “the Administrator” could bring action against persons engaged in overcharges for “an order enjoining such acts or practices, or for an order enforcing compliance *1198 with such provision, and upon a showing by the Administrator that such person has engaged, or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond.” Id.
The Supreme Court did not have' to make much of á stretch to determine that the phrase “enforcing compliance with such provision,” and expressly referring to “a permanent or temporary injunction, restraining order, or other order,” would include restitution for amounts collected exceeding the ceilings determined under the statute. The Government in the present case- asks us to work a far greater expansion of the statutory grant enabling the District Court in a civil RICO action brought by the Government under § 1964(a). We further note that the Court in Porter was ordering restitution, under a statute designed to combat inflation. Restitution of overcharge works a direct remedy of past inflation, directly effecting the goal of the statute. The Court in Porter set forth two theories under which “[a]n order for the recovery and restitution of illegal rents may be considered a proper ‘other order’ ” under the applicable statute. 328 U.S. at 399, 66 S.Ct. 1086. First, the recovery of the illegal payment by the victim tenant “may be considered as an equitable adjunct to the injunction decree,” as it effects “the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief.” Id. (noting that “such a recovery could not be obtained through an independent suit in equity if an adequate legal remedy were available.”). The equitable jurisdiction of the Court having been properly invoked, the Court then had the power “to decide all relevant matters in dispute and to award complete relief .... ” Id. Also, and more to the point, the Court was authorized “in its discretion, to decree restitution of excessive charges in order to give effect of the policy of Congress.” Id. at 400, 66 S.Ct. 1086. The policy of Congress under the EPCA was to prevent overcharges with inflationary effect. The goal of the RICO section under which the government seeks disgorgement here is to prevent or restrain future violations. We therefore must consider the forward-looking nature of the remedy, in a way not applicable to a different remedy in Porter for the accomplishment of a different goal under a different statute.
Section 1964(a) provides jurisdiction to issue a variety of orders “to prevent and restrain” RICO violations. This language indicates that the jurisdiction is limited to forward-looking remedies that are aimed at future violations. The examples given in the text bear this out. Divestment, injunctions against persons’ future involvement in the activities in which the RICO enterprise had been engaged, and dissolution of the. enterprise are all aimed at separating the RICO criminal from the enterprise so that he cannot commit violations in the future. Disgorgement, on the other hand, is a quintessential^ backward-looking remedy focused on remedying the effects, of past conduct to restore the status quo. See, e.g., Tull v. United States, 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). It is measured by the amount of prior unlawful gains and is awarded without respect to whether the defendant will act unlawfully in the future. Thus it is both aimed at and measured by past conduct.
The Government would have us interpret § 1964(a) instead to be a plenary grant of equitable jurisdiction, effectively ignoring the words “to prevent and restrain” altogether. This not only nullifies the plain meaning of the terms and violates our canon of statutory construction that we should strive to give meaning to every word, see, e.g., Murphy Explor. & *1199 Production Co. v. United States Dept. of the Interior, 252 F.3d 473, 481 (D.C.Cir.2001), but also neglects Supreme Court precedent. In Meghrig v. KFC Western, Inc., 516 U.S. 479, 488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), the Court held that compensation for past environmental cleanup was ruled out by the plain language of the Resource Conservation and Recovery Act which authorized actions “to restrain” persons [1] who were improperly disposing of hazardous waste. If “restrain” is only aimed at future actions, “prevent” is even more so.
Mitchell v. DeMario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), relied on by the Government, is not to the contrary. The Mitchell case was brought under the Fair Labor Standards Act of 1938, 29 U.S.C. § 215, 52 Stat. 1060 (1938) (“FLSA”). In that action, the Government was invoking the court’s jurisdiction to restrain violations of a section making it unlawful for a covered employer to discharge or discriminate against employees who had filed complaints or instituted actions under the FLSA. The Court reviewed the whole breadth of that broad Act to conclude that the available remedies included not only injunction against fur-r ther discrimination and mandatory injunctions of reinstatement, but also a “make whole” reimbursement for lost wages because of the discriminatory discharge.. As in Porter, the Court reiterated that in equitable jurisdiction “[ujnless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.” Mitchell, 361 U.S. at 291, 80 S.Ct. 332 (quoting Porter, 328 U.S. at 398, 66 S.Ct. 1086). In the RICO Act, Congress provided a statute granting jurisdiction defined with the sort of limitations not present in the FLSA or the EPCA. The statute under which the Government sued Appellants, 18 U.S.C. § 1964(a), granted only the jurisdiction which we set forth above. The District Court, so far as is relevant to actions under that section, has jurisdiction only
to prevent' and restrain violations of [RICO] by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enter- prise; imposing reasonable restrictions on the future activities or investments of any person, including but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise ....
18 U.S.C. § 1964(a) (emphasis added). The order of disgorgement is not within the terms of that statutory grant, nor any necessary implication of the language of the statute.
In considering the broad language from Porter upon which our dissenting colleague relies for the proposition that we should find disgorgement available because Congress has not taken it away, we note that the Supreme Court considered a similar argument in Meghrig. The High Court nonetheless limited the available remedies under CERCLA to those provided in the statute, declaring that
where Congress has provided “elaborate enforcement provisions” for remedying the violation of a federal statute, as Congress has done with RCRA and CERCLA, “it cannot be assumed that Congress intended to authorize by implication additional judicial remedies
516 U.S. at 487-88, 116 S.Ct. 1251 (quoting Middlesex County Sewerage Auth. v. Nat’l Sea Clammers Ass’n, 453 U.S. 1, 14, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)).
*1200 In RICO, as in RCRA and in CERCLA, Congress has laid out elaborate enforcement proceedings. One of those proceedings is a government action brought under § 1964(a). That one does not provide for disgorgement. That one provides only for orders which “prevent or restrain” future violations. Disgorgement does not do that.
It is true, as the Government points out, that disgorgement may act to “prevent and restrain” future violations by general deterrence insofar as it makes RICO violations unprofitable. ■ However,. as the Second Circuit also observed, this argument goes too far. “If this were adequate justification, the phrase ‘prevent and restrain’ would read ‘prevent, restrain, and discourage,’ and would allow any remedy that inflicts pain.” Carson, 52 F.3d at 1182.
The remedies available under § 1964(a) are also limited by those explicitly included in the statute. The. words “including, but not limited to” introduce a non-exhaustive list that sets out specific examples of a general principle. See Dong v. Smithsonian Inst, 125 F.3d 877, 880 (D.C.Cir.1997). Applying the canons of noscitur a sociis and ejusdem generis, we will expand on the remedies explicitly included in the statute only with remedies similar in nature to those enumerated. See Wash. State Dep’t of Soc. & Health Sens. v. Guardianship Estate of Keffeler, 537 U.S. 371, 384, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). The remedies explicitly granted in § 1964(a) are all directed toward future conduct and separating the criminal from the RICO enterprise to prevent future violations. Disgorgement is a very different type of remedy aimed at separating the criminal from his prior ill-gotten gains and thus may not be properly inferred from § 1964(a).
The' structure of RICO similarly limits courts’ ability to fashion equitable remedies. Where a statute has a “comprehensive and reticulated” remedial scheme, we are reluctant to authorize additional remedies; Congress’ care in formulating such a “carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.” Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (quoting Mertens v. Hewitt Associates, 508 U.S. 248, 251, 254, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)) (internal quotations omitted) (emphasis in original). RICO already provides for a comprehensive set of remedies. When Congress intended to award remedies that addressed past harms as well as those that offered prospective relief, it said as much. In a criminal RICO action the defendant must forfeit his interest in the RICO enterprise and unlawfully acquired proceeds, and may be punished with fines, imprisonment for up to twenty years, or both. 18 U.S.C. § 1963(a). In a civil case the Government may request limited equitable relief under § 1964(a). Individual plaintiffs are made whole and défendants punished through treble damages under 18 U.S.C. § 1964(c). This “comprehensive and reticulated” scheme, along with the plain meaning of the words themselves, serves to raise a “necessary and inescapable inference,” sufficient under Porter, 328 U.S. at 398, 66 S.Ct. 1086, that Congress intended to limit relief under § 1964(a) to forward-looking orders, ruling out disgorgement.
Congress’ intent when it drafted RICO’s remedies would be circumvented by the Government’s broad . reading of its § 1964(a) remedies. . The disgorgement requested here is 'Similar in effect to the relief mandated under the criminal forfeiture provision, § 1963(a), without requiring the inconvenience of meeting the addi *1201 tional procedural safeguards that attend criminal charges, including a five-year statute of limitations, 18 U.S.C. § 3282, notice requirements, 18 U.S.C. § 1963(Z), and general criminal procedural protections including proof beyond a reasonable doubt. Further, on the Government’s view it can collect sums paralleling-perhaps exactly-the damages available to individual victims under § 1964(c). Not only would the resulting overlap allow the Government to escape a statute of limitations that would restrict private parties seeking essentially identical remedies, see Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), but it raises issues of duplicative recovery of exactly the sort that the Supreme Court said in Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 269, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), constituted a basis for refusing to infer a cause of action not specified by the statute. Permitting disgorgement under § 1964(a) would therefore thwart Congress’ intent in creating RICO’s elaborate remedial scheme.
A note appended to the statute stating that RICO “shall be liberally construed to effectuate its remedial purposes” does not effect this structural inference. Organized Crime Control Act of 1970, Pub.L. No. 91-452, § 904(a), 84 Stat. 947 (codified in a note following 18 U.S.C. § 1961). This clause may warn us against taking an overly narrow view of the statute, but “it is not an invitation to apply RICO to new purposes that Congress never intended.” Reves v. Ernst & Young, 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The text and structure of RICO indicate that those remedial purposes do not extend to disgorgement in civil cases.
The Second Circuit in Carson has interpreted “prevent and restrain” not to eliminate the possibility of disgorgement altogether, but to limit it to cases where there is a finding “that the gains are being used to fund or promote the illegal conduct, or constitute capital available for that purpose.” Carson, 52 F.3d at 1182. The Fifth Circuit adopted this interpretation in a case holding that disgorgement after the defendant had ceased production of an allegedly defective product would be inappropriately punitive rather than directed toward future violations. See Richard v. Hoechst Celanese Chemical Group, 355 F.3d 345, 355 (5th Cir.2003). While we avoid creating circuit splits when possible, in this case we can find no justification for considering any order of disgorgement to be forward-looking as required by § 1964(a). The language of the statute explicitly provides three alternative ways to deprive RICO defendants of control over the enterprise and protect against future violations: divestment, injunction, and dissolution. We need not twist the language to create a new remedy not contemplated by the statute.
Our colleague reminds us that the Supreme Court has instructed “[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.” Dissent at 1220 (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). This would be most devastating to one side of the case or the other if we were in fact attempting to overrule a Supreme Court precedent. That is, if there were a Supreme Court case that had direct application to the facts before us, we would be required to follow it,, and that would be the end of the matter. We would not need to consider any other line of cases. However, the Rodriguez de Quijas language is not particularly helpful *1202 when no precedent of the Supreme Court “has direct application,” as in the present case. There is not a Supreme Court case dealing with the jurisdiction of a district court to order-disgorgement-under RICO § 1964(a): There is not a Supreme Court case discussing that question; There is, in short, no Supreme Court case having direct application. With no Supreme Court case having direct application, it is our duty to construe the statute. That is what we have done.
III. Conclusion -
Because we hold that the District Court erred when it found that disgorgement was an available remedy under 18 U.S.C. § 1964(a), we reverse the District Court and grant summary judgment in favor of Appellants as to the Government’s disgorgement claim.

. While the Carson language may appear to be dicta, the Second Circuit remanded for determination of which disgorgement amounts were sufficiently directed to prevention and restraint to qualify under § 1964(a), thus treating the language on availability of disgorgement as essential to the outcome of the case, and therefore a holding. Some other courts have followed Carson. See, e.g., Richard v. Hoechst Celanese Chem. Group, Inc., 355 F.3d 345, 354 (5th Cir.2003) (observing that "the Second Circuit noted that disgorgement is generally available under § 1964”); United States v. Private Sanitation Indus. Ass'n, 914 F.Supp. 895, 901 (E.D.N.Y. 1996) ("[T]he disgorgement in this case is clearly directed towards the prevention of future illegal conduct, and is therefore a permissible remedy for civil RICO violations under the limitations imposed by Carson.”).

. United States Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment Dismissing the Government's Disgorgement Claim, Appellee's Appendix at 813-14. Although Appellee's Appendix was filed under seal, the expert testimony presented to the court has also been posted by the government on its website.