# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 14, 2017         Decided April 25, 2017

No. 16-5101

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT
OF JUSTICE, ET AL.,
APPELLEES

v.

PHILIP MORRIS USA INC., FORMERLY KNOWN AS PHILIP
MORRIS INCORPORATED, ET AL.,
APPELLANTS

BROWN & WILLIAMSON TOBACCO CORPORATION, DIRECTLY
AND AS SUCCESSOR BY MERGER TO AMERICAN TOBACCO
COMPANY, ET AL.,
APPELLEES

———

Consolidated with 16-5127

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:99-cv-02496)

———

*Michael A. Carvin* argued the cause for appellants. On the briefs were *Noel J. Francisco*, *Peter J. Biersteker*, *Miguel A. Estrada*, *Amir C. Tayrani*, *Jeffrey A. Mandell*, and *Robert J. Brookhiser Jr.*

*Melissa N. Patterson*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Mark B. Stern* and *Alisa B. Klein*, Attorneys.

*Eric R. Glitzenstein* argued the cause for appellees Tobacco-Free Kids Action Fund, et al. With him on the brief was *Katherine A. Meyer*.

Before: BROWN, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: In 2006, the district court found that Appellant cigarette manufacturers had for decades conspired to deny the health effects of smoking in violation of RICO. *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) ("*Liability Opinion*"). As a remedy, the court ordered Appellants to disseminate "corrective statements" relating to the health effects of smoking in newspapers, on television, on cigarette packages, and on websites. *Id.* at 938-41. For more than a decade since, the parties have battled over the precise language of these statements—both in and out of court. Appellants claim the most recent language proposed by the government is conduct-focused and is backward-looking beyond the scope of RICO and, for other reasons, violates the First Amendment. The

district court approved the government's proposed language. We affirm in part and reverse in part.

## BACKGROUND

In August 2006, a district court found that Appellant cigarette manufacturers ("Defendants") had violated RICO by associating together to misinform the public about smoking. *Liability Opinion*, 449 F. Supp. 2d at 851-906. The district court found that "an injunction ordering Defendants to issue corrective statements is appropriate and necessary to prevent and restrain them from making fraudulent public statements on smoking and health matters in the future." *Id.* at 926. The court identified five topics about which it would order Defendants to make corrective statements but deferred deciding the wording of the statements pending further briefing. *Id.* at 928, 939-40.

On appeal, we upheld the concept of a corrective-statements remedy against RICO and First Amendment challenges because "[r]equiring Defendants to reveal the previously hidden truth about their products will prevent and restrain them from disseminating false and misleading statements, thereby violating RICO, in the future." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1140 (D.C. Cir. 2009) ("*2009 Opinion*"). Still, we noted, such statements must be "confine[d] . . . to 'purely factual and uncontroversial information,' geared toward[] thwarting prospective efforts by Defendants to either directly mislead consumers or capitalize on their prior deceptions by continuing to advertise in a manner that builds on consumers' existing misperceptions." *Id.* at 1144-45 (quoting *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)).

On remand from the *2009 Opinion*, the district court formulated the text of the corrective statements, including

bullet points containing factual statements on each topic preceded by a preamble stating: "A Federal Court has ruled that [Defendants] deliberately deceived the American public about [the topic of the statement], and has ordered those companies to make this statement. Here is the truth[.]" *United States v. Philip Morris USA, Inc.*, 907 F. Supp. 2d 1, 8-9 (D.D.C. 2012). Defendants appealed.

This Court held that the "district court exceeded its authority under RICO because the preambles reveal nothing about cigarettes; instead, they disclose defendants' prior deceptive *conduct*." *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 261 (D.C. Cir. 2015) ("*Corrective Statements Opinion*") (emphasis in original). While the bulleted statements "reveal[ed] the previously hidden truth about [Defendants'] *products*," the preambles did not and could "not be justified on grounds of general deterrence." *Id.* at 263 (quoting *2009 Opinion*, 566 F.3d at 1140) (emphasis in original). The Court did not address Defendants' constitutional challenges to the preambles. *See id.* at 256. The Court remanded for further proceedings. The United States filed a petition for panel rehearing, seeking clarification regarding which portions of the preambles the Court expected to be altered. We denied the petition, stating that the Government sought "relief that the district court may consider in the first instance on remand." Orders, *United States v. Philip Morris USA Inc.*, Nos. 13-5028 & 14-5161 (D.C. Cir. Aug. 5, 2015).

Subsequently, the district court granted two Defendants permission to sell certain cigarette brands to non-Defendant ITG Brands, LLC, and to make ITG and its affiliates ("ITG Entities") parties to this case for limited purposes. The order specified that the ITG Entities would be responsible for publishing corrective statements with "slightly modified preamble language." Order Authorizing Transfer of Certain

Cigarette Brands and Businesses to ITG Brands, LLC, 6-7, *United States v. Philip Morris USA, Inc.*, No. 99-2496 (D.D.C. June 8, 2015), ECF No. 6151.

On remand, the district court ordered the preambles to read as follows:

> A Federal Court has ordered [Defendants] to make this statement about [the topic of the statement]. Here is the truth: . . . .

*United States v. Philip Morris USA Inc.*, 164 F. Supp. 3d 121, 124-25 (D.D.C. 2016) ("*Revised Preamble Opinion*"). The district court explained that the new preambles "do not in any way send a message to the public that Defendants deceived them in the past, nor that Defendants are being punished for their previous conduct." *Id.* at 125-26. The district court also rejected Defendants' First Amendment arguments. *Id.* at 126-27. Defendants appealed.

### DISCUSSION

#### A. Standard of Review

This Court reviews *de novo* the district court's conclusions that the corrective statements comport with RICO and the First Amendment. *2009 Opinion*, 566 F.3d at 1110, 1147.

#### B. RICO

In a civil RICO action, the statute provides district courts with jurisdiction to impose remedies that "prevent and restrain" future RICO violations, not to punish prior violations. 18 U.S.C. § 1964(a). Thus, the district court's remedy requiring Defendants to issue corrective statements complied with RICO

because Defendants would be "impaired in making false and misleading assurances" about cigarettes if simultaneously required to tell the truth. *2009 Opinion*, 566 F.3d at 1140. "In other words, we held, disseminating corrective statements *on the proposed topics* would prevent and restrain future RICO violations by '[r]equiring Defendants to reveal the previously hidden truth about their *products*.'" *Corrective Statements Opinion*, 801 F.3d at 261 (quoting *2009 Opinion*, 566 F.3d at 1140) (emphasis in original). However, the district court's "jurisdiction is limited to forward-looking remedies that are aimed at future violations." *United States v. Philip Morris USA Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005) ("*Disgorgement Opinion*").

Defendants allege that the preambles approved by the district court exceed its RICO jurisdiction because the preambles "convey the unequivocal message that Defendants previously deceived the American public and, further, that they are being compelled by a court to make the corrective statements as a sanction for prior wrongdoing." Defendants' Br. at 30. Defendants point to five elements that they believe demonstrate the backward-looking nature of the preambles, both individually and cumulatively: (1) the "Here is the truth" tagline; (2) the declaration that "A Federal Court has ordered [Defendants] to make this statement"; (3) that different preambles are permitted for the ITG Entities; (4) the description in the preamble of two of the specific topics; and (5) the district court's rejection of Defendants' proposed alternative preambles.

Defendants assert that the "Here is the truth" tagline conveys the unambiguous message that Defendants have previously withheld "the truth" about the effects of smoking because "[n]o one affirms that a message is 'the truth'—or is ordered by a court to tell 'the truth'—for no reason."

Defendants' Br. at 31-32. There was no evidence that the public would doubt the truth of the bullet points without this tagline and Defendants urge that "[t]he imprimatur of a federal court unequivocally validates the veracity of the bullet points." *Id.* at 41. Similarly, Defendants allege that the declaration "A Federal Court has ordered [Defendants] to make this statement" is backward-looking. Because courts do not ordinarily order companies to disseminate information absent prior wrongdoing, Defendants allege that this phrase communicates that they are being compelled to speak as punishment for prior wrongdoing. Ultimately, they argue, these aspects of the tagline reveal nothing about cigarettes and focus only on prior deceptive conduct.

We agree that, read together, these two phrases most naturally suggest prior misconduct by Defendants. Such language "can serve only two purposes: either to attract attention that a correction follows or to humiliate the advertiser," *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 763 (D.C. Cir. 1977), neither of which is a permissible goal under civil RICO, *Corrective Statements Opinion*, 801 F.3d at 262 ("Correcting consumer misinformation, which 'focuse[s] on remedying the effects of past conduct,' is . . . an impermissible objective under RICO." (quoting *Disgorgement Opinion*, 396 F.3d at 1198)); *id.* at 256 (noting that RICO's civil-remedy provision does not provide for remedies that "seek to punish prior wrongdoing").

This problem is remedied by simply removing the "Here is the truth" line such that the preambles read only:

> A Federal Court has ordered [Defendants] to make this statement about [the topic of the statement].

This modified preamble is aimed "toward[] thwarting prospective efforts by Defendants" to commit future RICO violations. *2009 Opinion*, 566 F.3d at 1144-45. It consists of only two parts, one that Defendants cannot challenge and one that Defendants largely do not challenge.

First, the preambles attribute the subsequent statements to a federal court. Defendants have consistently failed to challenge—and some specifically requested—language attributing the corrective statements to a court. *See, e.g.*, JA 219 (Defendant Lorillard requesting preamble language stating, "The following statement is made by Lorillard Tobacco Company pursuant to a Court Order"); JA 138 (Defendants R.J. Reynolds and Brown & Williamson requesting that statements include the phrase "This message is furnished by [Defendant] pursuant to a Court Order"); JA 91 (Defendant Philip Morris requesting that it be allowed to disassociate itself from any statement with which it disagreed by attributing the statement to the Court); JA 417-19 (Defendants failing to object to language stating that the corrective statement was "Paid for by [Cigarette Manufacturer Name] under order of a Federal District court"). Even assuming it is true, as Defendants urge, that each of these instances involved proposals for a footer indicating that statements were issued "pursuant to a Court Order," it is not clear why this particular language in a preamble suggests past misconduct while their own slightly different proposals did not.

Second, the modified preamble introduces the topic of the statement to follow. The topic statements are largely unchallenged, with the exception of Statements C and D. *See infra* Section II(D).

The modified preambles satisfy RICO notwithstanding Defendants' additional arguments. Defendants point to the fact

that different preambles are permitted for the ITG Entities. Specifically, ITG Entities may include on package onserts and websites that "[a] Federal Court has ordered . . . [Defendant] (the previous maker of [insert brand]) to make this statement . . . ." J.A. 1127-29. Defendants urge that if the revised preambles did not suggest that Defendants engaged in past misconduct, there would be no need for such differentiation. However, this sort of language was anticipated and ordered long ago without opposition from the Defendants. Defs.' Statement in Support of Unopposed Mot. For an Order Authorizing Transfer of Certain Cigarette Brands and Businesses to ITG Brands, LLC, 12-13, *Philip Morris*, No. 99-2496 (D.D.C. Apr. 30, 2015), ECF No. 6143 (ITG Entities representing that "ITG Brands will provide Corrective Statements on the packaging for the Acquired Brands, with the preambles tailored slightly to reflect truthfully that ITG Brands was not named as a defendant and was not found liable"); Order at 6-7, *Philip Morris*, No. 99-2496 (D.D.C. June 8, 2015), ECF No. 6151 (ordering that ITG Entities would be responsible for publishing Corrective Statements with "slightly modified preamble language for each Corrective Statement"). Indeed, such a distinction is necessary to preserve the accuracy of the corrective statements. The bullet points in Statement D—no longer challenged—specifically refer to Defendants' past actions regarding nicotine manipulation. The modified preambles preserve the accuracy of this statement by clarifying that the ITG Entities were not defendants and were not themselves originally ordered to make statements.

Because we hold that the modified preambles satisfy RICO, it cannot be true, as Defendants argue, that "the only reason to prefer the Government's proposal is to taint Defendants with implications of past wrongdoing." Defendants' Br. at 39.

**C. First Amendment**

Although we have determined that the modified preambles do not exceed the statutory authority granted under RICO, the question remains as to whether this compelled speech is violative of Defendants' First Amendment rights. The threshold question for this court is what standard applies to guide us in making that determination.

Traditionally, First Amendment questions arising in the arena of "commercial speech" have occasioned scrutiny under the standard of *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). Under *Central Hudson*, protected speech may be regulated if the governmental interest is "substantial." *Id.* at 566. Any such regulation must "directly advance[] the governmental interest asserted." *Id.* When analyzing this requirement, the Supreme Court "has commonly required evidence of a measure's effectiveness." *Am. Meat Inst. v. Dep't of Agric.*, 760 F.3d 18, 26 (D.C. Cir. 2014) (en banc) ("*AMI*") (citing *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). Finally, any regulation cannot be "more extensive than is necessary to serve that interest," *Cent. Hudson*, 447 U.S. at 566, a standard the government cannot satisfy "if it presents no evidence that less restrictive means would fail," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 555 (D.C. Cir. 2015). Appellants argue that that standard is applicable to the present controversy.

The government argues that the present controversy is governed by *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985). *Zauderer* teaches that the careful "evidentiary parsing" mandated by *Central Hudson* "is hardly necessary when the government uses a disclosure mandate to achieve a goal of informing consumers about a particular product trait, assuming of course that the reason for informing consumers

qualifies as an adequate interest." *AMI*, 760 F.3d at 26 (citing *Zauderer*, 471 U.S. at 650). "[B]y acting only through a reasonably crafted disclosure mandate, the government meets its burden of showing that the mandate advances its interest in making the 'purely factual and uncontroversial information' accessible to the recipients." *Id.* (quoting *Zauderer*, 471 U.S. at 651). Under *Zauderer*, then, as long as a disclosure requirement is not "unjustified or unduly burdensome," a company's rights "are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." 471 U.S. at 651.

The parties agree that this Court previously held that *Zauderer* controlled the First Amendment issues in this case. *See 2009 Opinion*, 566 F.3d at 1144-45 (citing *Zauderer* as the test under which the corrective statements would be judged); *see also Revised Preamble Opinion*, 164 F. Supp. 3d at 126 (noting that this Court did not question the district court's ruling that *Zauderer* was the appropriate standard in this case). Because "a court involved in later phases of a lawsuit should not re-open questions decided," *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995), we continue to analyze the preambles under *Zauderer*. Contrary to Defendants' assertion, nothing in this Court's en banc decision in *AMI* compels a contrary result. *See AMI*, 760 F.3d at 20 (holding that *Zauderer* applies "to disclosure mandates aimed at addressing problems other than [consumer] deception"). Indeed, the *Corrective Statements Opinion*, which continued to analyze the First Amendment issues in this case under the *Zauderer* standard, was decided after *AMI*. *See Corrective Statements Opinion*, 801 F.3d at 260 (applying *AMI*'s discussion of the *Zauderer* test to the First Amendment issues in this case). Defendants also argue that *National Association of Manufacturers*, 800 F.3d at 519-20, directs us to apply

*Central Hudson* scrutiny to the preambles because they are unconnected to advertising or labeling at the point of sale. But another panel of this Court cannot overrule the law-of-the-case. *See Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1077 n.2 (D.C. Cir. 1984) ("A decision of one panel of this court may not be overruled by another panel; a panel's decision may be rejected only by the court en banc.").

We find that the preamble requirements are "reasonably related to the [government's] interest in preventing deception of consumers." *Zauderer*, 471 U.S. at 651. The preambles are confined to "'purely factual and uncontroversial information,' geared toward[] thwarting prospective efforts by Defendants to either directly mislead consumers or capitalize on their prior deceptions by continuing to advertise in a manner that builds on consumers' existing misperceptions." *2009 Opinion*, 566 F.3d at 1144-45 (quoting *Zauderer*, 471 U.S. at 651). The modification discussed above, *see supra* Section II(B), removes any inference of past misconduct such that the preambles no longer "convey a certain innuendo," *AMI*, 760 F.3d at 27, or "moral responsibility," *Nat'l Ass'n of Mfrs.*, 800 F.3d at 530. Finally, mandating the inclusion of a one-sentence preamble is not unduly burdensome. "To the extent that the government's interest is in assuring that consumers receive particular information (as it plainly is when mandating disclosures that correct deception), the means-end fit is self-evidently satisfied when the government acts only through a reasonably crafted mandate to disclose 'purely factual and uncontroversial information' about attributes of the product or service being offered." *AMI*, 760 F.3d at 26.

## D. Statement C and D topic descriptions

Defendants also challenge the topic descriptions in the preambles to Statements C and D, asserting that they exceed

the remedial scope of civil RICO because they convey past wrongdoing. The Statement D topic description explains that Defendants are required to make the statement "about designing cigarettes to enhance the delivery of nicotine." J.A. 922. Defendants cannot challenge the preamble language in Statement D. As this Court previously held, Defendants waived any challenge to language that they "manipulate[d] [the] design of cigarettes in order to enhance the delivery of nicotine" or "intentionally designed cigarettes to make them more addictive." *Corrective Statements Opinion*, 801 F.3d at 258-59 (first alteration added).

The Statement C topic description states that Defendants are required to make the following statement "about selling and advertising low tar and light cigarettes as less harmful than regular cigarettes." J.A. 922. This language was not previously considered and is indeed backward-looking, as it implies that Defendants previously sold and advertised cigarettes in such a way. Alternatively, a topic description requiring Defendants to make the statement "about low tar and light cigarettes being as harmful as regular cigarettes," "the harmfulness of low tar and light cigarettes," or "the lack of significant health benefit from smoking low tar and light cigarettes" would be permissible under both RICO and the First Amendment.

## CONCLUSION

For the reasons set forth above, the district court's opinion and order establishing the preamble language in its corrective-statement remedy is affirmed in part and reversed in part.

In short, while we remand this matter for further proceedings, we see no reason why extensive proceedings will be required in the district court. With the minor revisions

mandated in this opinion, the district court can simply issue an order requiring the corrected statements remedy to go forward.