# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-0774

HARRIET H. KRINER, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Decided October 25, 2023)

*Jennifer T.S. Healy* and *Harold H. Hoffman*, both of Arlington, Virginia, were on the brief for the appellant.

*Richard J. Hipolit,* Deputy General Counsel for Veterans Programs; *Mary Ann Flynn*, Chief Counsel; *Dustin P. Elias*, Deputy Chief Counsel; and *Abigail J. Schopick,* all of Washington, D.C., were on the brief for the appellee.

Before TOTH, LAURER, and JAQUITH, *Judges*.

LAURER, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a concurring opinion.

LAURER, *Judge*: Harriet H. Kriner, the surviving spouse of United States Army veteran Delbert V. Kriner,[1] through counsel, appeals an April 1, 2019, Board of Veterans' Appeals (Board) decision denying accrued benefits, nonservice-connected burial benefits, and service-connected burial benefits.[2] In a February 2021 single judge memorandum decision, the Court affirmed the Board's decision.[3] Mrs. Kriner appealed the Court's decision to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). The Federal Circuit affirmed the part of the Court's decision affirming the Board's denial of burial benefits but vacated the part of the Court's decision

---

[1] Mr. Kriner regrettably passed away on January 13, 2016. Record (R.) at 243. The Court's references are to the Record of Proceedings filed on April 7, 2023.

[2] Record (R.) at 135-41.

[3] *Kriner v. McDonough* (*Kriner I*), No. 20-0774, 2021 WL 751539 (Vet. App. Feb. 26, 2021), *aff'd in part*, *vacated in part, remanded*, No. 2021-2076, 2022 WL 985623 (Fed. Cir. Mar. 31, 2022) (*Kriner II*).

affirming the Board's denial of accrued benefits.[4] The Federal Circuit remanded the appeal since the Court didn't support its legal conclusion that Mr. Kriner's March 2015 submission, if an intent to file, couldn't change into accrued benefits for appellant.[5] Yet the Federal Circuit also held that this Court may not need to reach that legal question if it concludes that the veteran's March 2015 submission was not an intent to file.

Thus, the question for the Court is whether Mr. Kriner's March 2015 submission to VA is an intent to file a claim—a question the Court didn't explicitly answer in February 2021. Appellant argues that the March 2015 submission is an intent to file.[6] She also contends that she can substitute into the intent to file to then perfect a claim for benefits.[7] The Secretary disagrees and points the Court to VA's rationale behind creating the intent to file rules explained in the Federal Register.[8] To resolve the dispute, we must analyze VA's intent-to-file regulation—38 C.F.R. § 3.155. The Court determines that the Board didn't err when it reviewed the March 2015 submission and concluded that Mr. Kriner didn't submit an intent to file and didn't have a claim pending at the time of his death.[9] As explained below, we affirm the Board decision.

## I. FACTS

### A. Pension and Debt

To understand Mr. Kriner's March 2015 submission, the Court first reviews the context of the submission—especially given that VA received Mr. Kriner's letter a mere 2 days into the standardized claim regime.[10]

---

[4] *Kriner II*, 2022 WL 985623

[5] *Kriner II*, 2022 WL 985623, at * 4-5.

[6] Appellant's Brief (Br.) at 12-16. The Court's references are to the parties' re-briefing resulting from the Federal Circuit's decision to remand the appeal.

[7] Appellant's Br. at 22-24.

[8] Secretary's Br. at 13-18.

[9] R. at 139.

[10] For years, VA accepted informal claims for benefits, but effective March 24, 2015, VA amended its regulations and stopped that practice. VA replaced its informal claim rule with the "intent to file" scheme. 38 C.F.R. § 3.155 (2015). Here, the Board concluded that VA received Mr. Kriner's letter on March 26, 2015 (R. at 139), something appellant doesn't dispute, so the Court will only consider VA's newer regulations about an "intent to file."

2

In July 2010, VA terminated Mr. Kriner's nonservice-connected (NSC) pension effective January 1, 2007.[11] Before terminating, VA notified Mr. Kriner in May 2010 that it was proposing to do so.[12] An income verification match for 2007 revealed that Mr. and Mrs. Kriner had unearned income—earned interest—that Mr. Kriner didn't originally account for.[13] VA asked Mr. Kriner to complete income statements from 2007.[14] Rather than complete a VA Financial Status Report (VA Form 5655), he submitted an itemized report of medical expenses.[15] Mr. Kriner also failed to provide evidence of his earned interest.[16] VA determined that Mr. Kriner wasn't eligible for NSC pension from January 1, 2007, and as a result VA had overpaid Mr. Kriner benefits creating a debt totaling $80,895.[17]

In August 2010, Mr. Kriner submitted a claim to reopen his pension and challenged his debt.[18] Mr. Kriner also submitted Improved Pension Eligibility Verification Reports (VA Form 21-0516-1).[19] In December 2010, Mr. Kriner submitted additional documents to support his request for a debt waiver.[20] Then in August 2011, VA denied waiving Mr. Kriner's debt.[21] Through the course of challenging his debt, Mr. Kriner alleged that he received compensation for service-connected disabilities, but VA clarified in an April 2011 letter that it never awarded him service connection.[22]

---

[11] R. at 1652, 2287-88, 2293-95.

[12] R. at 1652.

[13] R. at 1652. Based on the record, it appears Mr. and Mrs. Kriner had unearned income of $4,179 and received an inheritance. R. at 1238-40, R. at 1652.

[14] R. at 1652.

[15] R. at 1652.

[16] R. at 1652; *see also* R. at 1135-37.

[17] R. at 1652. The precise overpayment was $78,946, but since Mr. Kriner had an existing debt of $1,949 the total debt equaled $80,895.

[18] R. at 1627-30; *see also* R. at 1632-34.

[19] R. at 1612-18.

[20] R. at 1433-89.

[21] R. at 1196-1201.

[22] R. at 1236, R. at 1228-29.

In March 2011, Mr. Kriner paid off his debt in full by sending VA a cashier's check for $80,895.[23]

In June 2012, Mr. and Mrs. Kriner cosigned a letter objecting to VA creating a debt and asserting that Mr. Kriner had been service connected since 1992.[24] Mr. Kriner sent follow up letters in December 2013[25] and January 2014.[26] VA responded with letters in May 2014,[27] September 2014,[28] and March 2015.[29]

### B. Mr. Kriner's March 2015 Letter

Mr. Kriner sent VA a letter in March 2015—this letter is the source of the legal complexities on appeal here. Mr. Kriner dated the letter on March 23, 2015, and VA received it on March 26, 2015.

Putting aside the intricacies presented by the letter's timing, the content of the letter is also pivotal. In his March 2015 letter, Mr. Kriner stated:

> This is in regards to [] Disability Pension Monies [] that you and your Debt Management Center extorted out of me on March 17, 2011. I previously wrote and told you that you were wrong. I was receiving disability pension also known as service connected pension not new and improved pension for which your office has not proven.
>
> You need to pay back my $80,895.00 plus my service connected pension and aid and attendance plus aggravation and it comes to a grand total of $196,474.98 immediately![30]

---

[23] R. at 1100-01.

[24] R. at 951-55.

[25] R. at 944.

[26] R. at 940.

[27] R. at 902-03.

[28] R. at 876-77.

[29] R. at 839-40.

[30] R. at 834.

4

Mr. Kriner and his representative in May, June, and August 2015 submitted requests for medical equipment.[31] In July 2015, VA sent Mr. Kriner a letter acknowledging receipt of his application for benefits and informed him that, if it needed more information, VA would contact him.[32]

In October 2015, VA notified Mr. Kriner that it had received his correspondence suggesting that he'd like to file a claim for benefits but that "VA regulations now require[d] all forms to be submitted on a standardized form."[33] VA's letter also said that, to begin processing his claim, Mr. Kriner must apply for benefits on a standardized form but that, if he wasn't ready to submit his claim, he could submit an intent to file.[34] And the October 2015 VA letter referenced VA's standardized forms that Mr. Kriner needed to file in order to submit either a claim for compensation or pension or an intent to file.[35]

## C. Mrs. Kriner's Request for VA Benefits

As noted above, Mr. Kriner unfortunately passed away in January 2016.[36] The next month, Mrs. Kriner applied for benefits, essentially claiming that Mr. Kriner suffered from 15 disabilities.[37] In March 2016, Mrs. Kriner called VA to inform them of her husband's death.[38] A month later, she applied for burial benefits.[39] Mrs. Kriner then applied for dependency and indemnity compensation (DIC), death pension, and accrued benefits.[40] She clarified that she wanted the accrued benefits—disability pension—that VA owed to her husband.[41]

---

[31] R. at 806, 807, 811-12.

[32] R. at 641.

[33] R. at 797, 797-99.

[34] R. at 797.

[35] R. at 797.

[36] R. at 785, R. at 520.

[37] R. at 790-93.

[38] R. at 785.

[39] R. at 780-81.

[40] R. at 632-37.

[41] R. at 556.

In December 2016, VA denied appellant's claim for accrued benefits.[42] She filed her Notice of Disagreement in February 2017,[43] and VA continued its denial in March 2017 through a Statement of the Case.[44] Appellant perfected her appeal to the Board in March 2017.[45]

## D. Board Decision

The Board denied appellant's claim for accrued benefits.[46] The Board examined Mr. Kriner's March 2015 letter and characterized it as a request to reinstate his NSC pension.[47] The Board concluded that VA acknowledged receipt of the March 2015 letter and that, in October 2015, it sent Mr. Kriner notice informing him that he had to file a claim on a standardized form.[48] Finally, the Board concluded that Mr. Kriner didn't submit a claim on a proper VA form during his lifetime and, as a result, there wasn't a pending claim at the time of his death.[49] The Board explained that, without a pending claim and since Mr. Kriner wasn't service connected for a disability during his lifetime, accrued benefits weren't warranted.[50]

## E. The Court's February 2021 Decision

In a February 22, 2021, single judge memorandum decision, the Court affirmed the Board's decision denying accrued benefits.[51] The Court held that Mr. Kriner's March 2015 letter was an informal communication and not a claim for benefits.[52] The Court explained that VA received Mr. Kriner's letter under the formal claim scheme,[53] meaning that VA required a claim on a prescribed form.[54] The Court described Mr. Kriner's letter as "at most, an intent to file a claim," but since he

---

[42] R. at 525.

[43] R. at 450-52.

[44] R. at 415-35.

[45] R. at 407.

[46] R. at 136-39.

[47] R. at 139.

[48] R. at 139.

[49] R. at 139.

[50] R. at 139.

[51] *Kriner I*, 2021 WL 751539, at * 1.

[52] *Kriner I*, 2021 WL 751539, at * 5.

[53] 38 C.F.R § 3.155(a) (2014).

[54] *Kriner I*, 2021 WL 751539, at * 5.

didn't use a standardized form—even after being informed of the standardized form requirement and provided with the necessary form—Mr. Kriner didn't have a pending claim.[55] And since Mr. Kriner never filed a claim, Mrs. Kriner wasn't entitled to accrued benefits.[56] The Court also agreed with the Board's conclusion that Mr. Kriner's October 2010 request for a waiver of the $80,895 overpayment debt "was final and therefore not pending at the time of his death."[57]

## F. The Federal Circuit's Decision

As noted above, the Federal Circuit affirmed this Court's decision affirming the Board's denial of burial benefits but vacated the part of the Court's decision affirming the Board's denial of accrued benefits.[58] The Federal Circuit first held that the Court correctly reviewed Mr. Kriner's March 2015 submission under the regulations creating the formal claim scheme.[59] But the Federal Circuit found that the Court didn't "supply a sufficient basis for [the] legal conclusion" that an intent to file, even submitted less than 1 year before a veteran's death, "is insufficient to allow" for a surviving spouse to seek accrued benefits.[60] The Federal Circuit also reasoned that it had to remand the appeal since the Court "merely assumed" that but didn't decide whether Mr. Kriner's March 2015 submission was a qualifying intent to file a claim.[61]

## II. ANALYSIS

### A. Legal Landscape

Questions of regulatory interpretation are questions of law that the Court reviews de novo.[62] The basics of regulatory interpretation are well established. The Court looks first to the text and structure of a regulation, the best indications of its plain meaning.[63] If the plain meaning

---

[55] *Kriner I*, 2021 WL 751539, at * 5.

[56] *Kriner I*, 2021 WL 751539, at * 5.

[57] *Kriner I*, 2021 WL 751539, at * 5.

[58] *Kriner II*, 2022 WL2022 985623, at * 6.

[59] *Kriner II*, 2022 WL2022 985623, at * 3.

[60] *Kriner II*, 2022 WL2022 985623, at * 4-5.

[61] *Kriner II*, 2022 WL2022 WL 985623, at * 5.

[62] *Foster v. McDonough*, 34 Vet.App. 338, 344-45 (2021).

[63] *See Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

of the regulation is clear, then such plain meaning controls and "that is 'the end of the matter.'"[64] While the plain language of a regulation is paramount to the interpretive effort, a court will sometimes "bring all its interpretative tools to bear"[65] in order to decipher meaning. A regulation isn't ambiguous simply because both parties insist that the plain meaning supports his or her position and neither party's interpretation is unreasonable to the Court.[66] Rather, a court must look to structure, history, and purpose to determine whether a regulation really has more than one reasonable meaning.[67]

Before March 24, 2015, VA accepted informal claims for benefits.[68] An informal claim was "[a]ny communication or action, indicating an intention to apply for one or more benefits" and had to "identify the benefit sought."[69] The essential elements for any claim, whether formal or informal, are "(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing."[70] Even under the informal claim regulations, to receive VA benefits, a claimant still had to file a formal application.[71] When a veteran only submitted an informal claim and failed to complete and return a formal application sent by the Secretary, VA considered the application for benefits incomplete.[72]

---

[64] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

[65] *Kisor*, 139 S. Ct. at 2423.

[66] *Kisor*, 139 S. Ct. at 2423.

[67] *Kisor*, 139 S. Ct. at 2424.

[68] 38 C.F.R. § 3.155(a) (2014).

[69] 38 C.F.R. § 3.155(a).

[70] *Brokowski v. Shinseki*, 23 Vet.App. 79, 84 (2009); *see also MacPhee v. Nicholson*, 459 F.3d 1323, 1326–27 (Fed. Cir. 2006) (holding that the plain language of the regulations requires a claimant to have an intent to file a claim for VA benefits); *Rodriguez v. West*, 189 F.3d 1351, 1354 (Fed. Cir. 1999) (noting that even an informal claim must be in writing); *Brannon v. West*, 12 Vet.App. 32, 35 (1998).

[71] 38 U.S.C. § 5101(a)(1)(A) (providing that "a specific claim in the form prescribed by the Secretary . . . must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary"); *see Jernigan v. Shinseki*, 25 Vet.App. 220, 229 (2012), *aff'd*, 521 F. App'x 931 (Fed. Cir. 2013) (holding that VA's requirement that it receive of a formal application form before it pays for a benefit is a valid exercise of the Secretary's rulemaking authority).

[72] *See Fleshman v. Brown,* 9 Vet.App. 548, 551 (1996) ("The appellant's unexecuted claim form was an informal claim and would not have been in the form prescribed by the Secretary until he returned it with the requested information.") (citing *Kluttz v. Brown,* 7 Vet.App. 304, 306–07 (1994); 38 C.F.R. § 3.155(a)); *see also Quarles v. Derwinski*, 3 Vet.App. 129, 137 (1992) (noting that, where a claimant fails to return to the Secretary a formal claim application within one year of submitting an informal claim, the informal claim is not a "cognizable claim for effective date purposes").

In 2015, VA implemented its "intent to file" process.[73] "An intent to file a claim must provide sufficient identifiable or biographical information to identify the claimant."[74] Unlike informal claims, an intent to file a claim doesn't require the claimant "to identify the specific benefit sought" but does require identification of the general benefit sought (such as compensation versus pension).[75] So long as a claimant files a formal application within 1 year of the submission, VA will consider the effective date to be the date it received the "intent to file" submission.[76]

VA's rule provides that a claimant may submit an intent to file through one of three methods.[77] VA specifies that a properly filed intent to file a claim can be submitted through:

(1) "Saved electronic application."

(2) "Written intent on a prescribed intent to file a claim form."

(3) "Oral intent communicated to designated VA personnel and recorded in writing."[78]

## B. Standard of Review

We must review two important Board conclusions here. The first conclusion is a question of law that the Court reviews de novo: Did the Board correctly find that the March 2015 letter wasn't an intent to file a claim?[79] The second conclusion is a question of fact that the Court reviews for clear error: Did Mr. Kriner have a claim pending at the time of his death?

In all decisions, the Board must support its legal conclusions and factual determinations with adequate reasons or bases that enable an appellant to understand the precise bases for its decision and facilitate this Court's review.[80] To satisfy this requirement, the Board must analyze the credibility and probative value of relevant evidence, account for the evidence it finds

---

[73] 38 C.F.R. § 3.155(b) (2015); *see Veterans Justice Grp., LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1342 (Fed. Cir. 2016).

[74] Standard Claims and Appeals Forms, 79 FR 57665.

[75] 38 C.F.R. § 3.155(b)(2) (2015).

[76] 38 C.F.R. § 3.155(b) (2020).

[77] 38 C.F.R. § 3.155(b)(1). VA's rule in (b)(1) uses the word "form" to describe the manner and method of submitting an intent to file but since the Court is also discussing literal paper forms administered by the Secretary, the Court will do its best not to confuse the method of submitting an intent to file with the paperwork used to submit the intent to file.

[78] 38 C.F.R. §§ 3.155(b)(1)(i)-(iii).

[79] R. at 139. *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (noting the Court's "longstanding practice of reviewing questions of law de novo without any deference to the [Board's] conclusions of law").

[80] 38 U.S.C. § 7104(d)(1); *Washington v. Nicholson*, 19 Vet.App. 362, 366-67 (2005).

persuasive or unpersuasive, and provide reasons for rejecting any evidence favorable to the appellant.[81]

## C. The Parties' Arguments

### 1. Appellant's Arguments

Appellant argues that, based on the plain language of 38 C.F.R. § 3.155(b), Mr. Kriner submitted an intent to file in March 2015.[82] She maintains that the March 2015 letter meets the requirements of VA's rule since it was (1) submitted by Mr. Kriner, (2) showed a desire for benefits, (3) provided biographical information, and (4) identified the general benefit sought.[83] Appellant rests her argument on the regulation's use of the term "can" and relies on VA's duty to review submissions sympathetically.[84] She also points to VA's October 2015 letter sent in response to Mr. Kriner's March 2015 letter and contends that, since VA responded to that letter, VA must've considered it an intent to file under 38 C.F.R. § 3.155(b)(4).[85] Finally, appellant concludes that, since Mr. Kriner had a pending intent to file with VA, she can perfect that claim as his substitute.[86] Appellant doesn't challenge the validity of VA's intent to file rule.[87]

Yet appellant ignores the three methods that VA's regulation directs for submitting an intent to file, and she doesn't explain why the letter qualifies as an intent to file even though it wasn't on a standard form.

### 2. Secretary's Arguments

The Secretary's position is straightforward—Mr. Kriner's March 2015 letter isn't an intent to file because it isn't one of the three methods listed in the rule.[88] To support that position, the Secretary asks the Court to look broadly at § 3.155(b) and to glean its meaning from VA's final

---

[81] *Washington*, 19 Vet.App. at 366-67.

[82] Appellant's Br. at 12-15.

[83] Appellant's Br. at 13-17.

[84] Appellant's Br. at 13-16.

[85] Appellant's Br. at 15.

[86] Appellant's Br. at 22-24.

[87] *Hembree v. Wilkie*, 33 Vet.App. 1, 5 (2020) ("[A]bsent a challenge to the validity of this regulation, we are bound to apply it.").

[88] Secretary's Br. at 7.

rulemaking discussed in the Federal Register.[89] In response to appellant's § 3.155(b)(4) argument, the Secretary essentially says that appellant is misreading the regulation since she's not reading it as a whole.[90] The Secretary disputes appellant's suggestion that VA accepted Mr. Kriner's March 2015 letter as an intent to file since the October 2015 correspondence from the agency says otherwise.[91] Finally, the Secretary contends that, even if the March 2015 letter were an intent to file, it doesn't relate to appellant's February 2016 submission for disability benefits.[92]

### D. Intent-to-File Rule

To decide this appeal, we'll focus our lens on VA's intent-to-file rule. The Court must decide whether VA restricted the way a claimant could submit an intent to file to the three enumerated methods. The determinant question, though, is, when VA says "[a]n intent to file a claim can be submitted in one of the following three ways" does it restrict an intent to file to only those three enumerated ways? To resolve this question, we'll scrutinize VA's use of the word "can" since "can" could have multiple meanings. Appellant interprets "can" as permissive, which would allow a claimant to submit an intent to file in a method beyond the three listed by VA. Although plausible to appellant, that isn't what the rule says, means, or intends.[93]

First text, then structure.[94] For starters, appellant's perspective misses crucial language within the rule—and that's a major problem.[95] Plus, context always matters.[96] The rule uses the word "can." And "can" doesn't on its face convey that what follows is an exhaustive list.[97] But appellant offers no response to the fact that "can" could speak to the latter half of the sentence "be

---

[89] Secretary's Br. at 12-13.

[90] Appellant's Br. at 11-12.

[91] Secretary's Br. at 13-16.

[92] Secretary's Br. at 21-23.

[93] *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737, (1985) ("[P]lain meaning, like beauty, is sometimes in the eye of the beholder"); *see also Kisor*, 139 S.Ct. at 2423-24 (holding that review of competing perspectives of a regulation's plain language requires a court to "make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning").

[94] *Goodman*, 870 F.3d at 1386; *Kisor*, 139 S.Ct. at 2419 ("[A] court must apply all traditional methods of interpretation to any rule, and must enforce the plain meaning those methods uncover.").

[95] Appellant's Br. at 12-15; *Donnelly v. F.A.A.*, 411 F.3d 267, 271 (D.C. Cir. 2005) ("We must strive to interpret a statute to give meaning to every clause and word, and certainly not to treat an entire subsection as mere surplusage.") (citing *See United States v. Philip Morris USA, Inc.,* 396 F.3d 1190, 1198–99 (D.C. Cir. 2005)).

[96] *See Van Dermark v. McDonough*, 57 F.4th 1374, 1381 (2023).

[97] 38 C.F.R. § 3.155(b)(1).

submitted in one of the following three ways."[98] And so appellant ignores the possibility that "can" might not speak to the enumerated methods available to submit an intent to file and instead could speak to whether a claimant may submit an intent to file at all. A claimant *can* file an intent to file—as in providing the opportunity to do so, compared to say, filing a claim[99] or requesting an application for benefits.[100]

The rule's language undermines appellant's reading. The regulation announces that an intent to file "can be submitted in one of the following three ways."[101] But appellant's reading fails to give meaning to the words "one," "following," and "three." That is, appellant's reading doesn't give any effect to the premise that a claimant can submit an intent to file in one of three ways. Meaning, that there can't be two intents to file for the same benefit and that there are only three ways to submit an intent to file. What's more, the word "following" then defines the three accepted methods a claimant can use to submit an intent to file. And this point segues from the words of the rule to the structure of the rule.

First, VA outlined how it "won't recognize more than one intent to file concurrently for the same benefit . . ."[102] But even more importantly, VA defined the three methods by which a claimant can submit an intent to file. In three indented subsections, VA listed those ways: through (1) a "[s]aved electronic application," (2) "[w]ritten intent on a prescribed intent to file a claim form," or (3) "[o]ral intent communicated to designated VA personnel and recorded in writing."[103] VA structured its rule by design, and the Court must give meaning to the way VA organized its intent-to-file rule.[104] By indenting and elaborating on the "one of . . . three ways," VA's use of "can" in its rule restricts what could constitute an intent to file exactly as if the regulation used the phrase "can only." Moreover, the persuasiveness we afford the structure of the rule is aside from the regulatory language itself. Appellant's reading gives no meaning to the language of the

---

[98] 38 C.F.R. § 3.155(b)(1).

[99] 38 C.F.R. § 3.155(d).

[100] 38 C.F.R. § 3.155(a).

[101] 38 C.F.R. § 3.155(a).

[102] 38 C.F.R. § 3.155(b)(6).

[103] 38 C.F.R. §§ 3.155(b)(1)(i)-(iii).

[104] *Atencio v. O'Rourke*, 30 Vet.App. 74, 82 (2018) (instructing that words shouldn't be read in isolation and instead should be read in the context of the regulatory structure and scheme); s*ee also Kisor*, 139 S. Ct. at 2415.

regulation or to the indented subsections. And those flaws in her analysis of the regulation weigh against reading the rule to allow more than the enumerated methods for submitting an intent to file as she suggests.

And when it comes to VA requiring the correct method for an intent to file, VA's rule under subsection (b)(4) states that "[i]f an intent to file a claim is not submitted in the form required by paragraph (b)(1) of this section . . . VA will not take further action unless a new claim or a new intent to file a claim is received."[105] Subsection (4)'s reference to paragraph (b)(1) further reinforces that a claimant can only submit an intent to file if it's (1) saved as an electronic application, (2) written on a prescribed form, or (3) orally communicated to particular VA personnel and recorded in writing. If a submission isn't in one of those three ways, VA won't act on it.[106] Embedded in rule (b)(4) is also the term "new," and that too must have meaning.[107] Within the larger picture of VA's intent-to-file rule, section (b)(4) clarifies that a claimant can't cure or rehabilitate an attempt to file when it's not made in one of the three ways outlined by VA. If the submission isn't in one of the three ways VA enumerated, VA won't take any further action until it receives a new claim or a new intent to file.[108]

The final structural point comes from subsection (b)(4)'s next door neighbor—subsection (b)(3). In subsection (b)(3), VA considered instances when a claimant submits information on the correct paper form as prescribed by the Secretary but doesn't submit enough information. When that occurs, VA must notify the claimant of the information necessary to complete the application.[109] So VA will help develop a claimant's intent to file but only when the intent to file was first submitted in one of the three ways VA allows. Both the text and the structure weigh against appellant's reading of VA's intent to file rule.

VA's published rulemaking—an interpretive tool our concurring colleague overlooks— also weighs against appellant's reading of the rule.[110] In the Federal Register, VA explained

---

[105] 38 C.F.R. § 3.155(b)(4).

[106] 38 C.F.R. § 3.155(b)(4).

[107] 38 C.F.R. § 3.155(b)(4).

[108] 38 C.F.R. § 3.155(b)(4)

[109] 38 C.F.R. § 3.155(b)(3).

[110] *Kisor*, 139 S. Ct. at 2423-4.

multiple times that an intent to file must be filed in one of the three ways listed in § 3.155(b)(1).[111] "[A]n intent to file a claim for benefits, which operates similarly to the current informal claim process, but requires that the submission establishing a claimant's effective date of benefits must be received in one of three specified formats."[112] Most pointedly, VA explained that "[n]on-standard narrative communications not falling within these three enumerated scenarios will not be considered an intent to file a claim received on the designated form, and accordingly will not establish an effective date placeholder."[113] So VA anticipated the circumstances we have here and explained that if a submission wasn't one of the three accepted methods, then it wasn't an intent to file. The Secretary cites this portion of the Federal Register, but appellant offers no response.[114] Appellant's reading of the rule isn't supported by the history of the intent to file rule.

When implementing § 3.155(a), VA considered the time that veterans would have to spend filing approved intent to file forms versus the delay created by accepting non-standard submissions. In addressing delay, VA noted "approximately half of the claimant population files non-standard submissions."[115] VA concluded that standardization would ultimately promote "the efficient and accurate processing and adjudication of claims and appeals."[116] What's more, the rule's overall purpose fits into VA's overriding goal to "standardize the claims and appeals process through the use of specific mandatory forms prescribed by the Secretary [to] drive modernization of the claims and appeals" to make filing claims "clearer and easier."[117] Plus, VA vowed that the guiding principle in its rulemaking would be to orderly and efficiently process claims and appeals,

---

[111] *See* Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660, 57,666 (Sept. 25, 2014) (amending 38 C.F.R. at Parts 3, 19, and 20) ("This final rule also implements the concept of an intent to file a claim for benefits . . . must be received in one of three specified formats.") ("[T]his final rule provides that there are three ways to submit an intent to file . . . .") ("Non-standard narrative communications not falling within these three enumerated scenarios will not be considered an intent to file a claim received on the designated form, and accordingly will not establish an effective date placeholder.") ("Even those claimants who, due to their disabilities, may have trouble filling out an application form, can utilize one of the three acceptable formats for an intent to file . . . .").

[112] 79 Fed. Reg. at 57,660.

[113] Secretary's Br. at 13 (citing (79 Fed. Reg. at 57,666)).

[114] *Compare* Secretary's Br. at 13, *with* Appellant's Reply Br. at 4-15.

[115] 79 Fed. Reg. at 57,661.

[116] 79 Fed. Reg. at 57,665.

[117] 79 Fed. Reg. at 57,660.

not to be overly technical or to reject forms for minor ministerial deficiencies.[118] But not following the intent to file process is beyond a technicality or ministerial deficiency and instead is ignoring the essence of the rule. VA's duty to sympathetically review a filing doesn't extend to accepting a non-standard submission.[119] The Court can't ignore VA's push towards standardization—a systemic change that the Federal Circuit has generally upheld.[120] Appellant's reading of § 3.155 isn't supported by the purpose behind the intent-to-file rule.

After careful review, we hold that there's no ambiguity in VA's intent-to-file rule and that a claimant must submit an intent to file in one of the three enumerated methods.[121] Otherwise stated, the best reading of § 3.155(b)(1) reads "can" restrictively. Appellant wants the Court to grant an exception to the three enumerated forms for an intent to file, but we won't unravel VA's formal claims scheme.

### E. Applying VA's Intent-to-File Rule

VA's intent-to-file rule specifies that there are three ways a claimant can submit an intent to file. Appellant isn't saying that Mr. Kriner submitted an intent to file in one of the three ways. Instead, she asks the Court to interpret VA's intent-to-file rule so that "veterans can use means other than those listed to submit an intent to file."[122] Essentially, appellant asks us to rule that there are at least four ways—and potentially countless more—to submit an intent to file. But VA's rule is clear. And since Mr. Kriner's March 2015 letter isn't one of the three authorized ways, he didn't submit an intent to file.

Mr. Kriner's March 2015 letter is a non-standard submission, so it isn't an intent to file. The Board concluded that Mr. Kriner didn't submit an intent to file by focusing on VA's intent-

---

[118] 79 Fed. Reg. at 57,685.

[119] *See, e.g.*, *Bailey v. Wilkie*, 33 Vet.App. 188, 199 (2021)

[120] *Compare* 38 C.F.R. § 3.155(a) (2014), *with* 38 C.F.R. § 3.155(b)(1). *Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1351-2 (Fed. Cir. 2016) ("The VA's stated reason for favoring standard claims forms is sufficient to show that the Final Rule's standard form requirement is rational" and noting that it is unlikely that VA's intent to file rules "will unduly burden veterans seeking to initiate claims."). *But see*, *Military-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1147 (Fed. Cir. 2021).

[121] *Kisor*, 139 S. Ct. at 2415 (instructing that if a court provides a "taxing" review of a regulation it doesn't necessarily mean the regulation is ambiguous).

[122] Appellant's Br. at 12.

to-file rule and VA's correspondence from October 2015.[123] The Board's conclusion is firmly supported by the record. First, to reiterate, Mr. Kriner's March 2015 letter doesn't qualify as an intent to file. Second, in October 2015, VA notified Mr. Kriner that "VA regulations now require all claims to be submitted on a standardized form" and that he could either submit his claim or submit an intent to file.[124] VA also pointed Mr. Kriner to the exact forms he needed to fill out in order for VA to begin processing a claim.[125]

Now the parties view the significance of VA's October 2015 letter differently. To appellant, that letter is the key to her appeal. She reasons that, since VA provided Mr. Kriner with the form, it "must have determined Mr. Kriner's March letter to be an intent to file."[126] On the other hand, the Secretary explains that, since VA encouraged Mr. Kriner to submit an intent to file, VA couldn't have viewed Mr. Kriner's March 2015 letter as an intent to file because § 3.155(b)(6) restricts duplicate intent to files.[127]

But what's most critical is how the Board interpreted the October 2015 letter.[128] The Board noted that the October 2015 letter "instructed [Mr. Kriner] that regulations now require all claims to be submitted on a standard form."[129] That's precisely what the October 2015 letter states.[130] And after examining the October 2015 letter, we find no error with how the Board interpreted the evidence.

Appellant also fails to argue that the Board erred either factually or legally in how it interpreted the October 2015 letter. She merely disagrees with how VA interpreted the evidence in October 2015 and then also disagrees with the way the Board reviewed that evidence in its

---

[123] R. at 139.

[124] R. at 797.

[125] R. at 797.

[126] Appellant's Br. at 15.

[127] Secretary's Br. at 14-15.

[128] *Smith v. Shinseki,* 24 Vet.App. 40, 48 (2010) ("The Board, not the Court, is responsible for assessing the credibility and weight to be given to evidence, and the Court may overturn the Board's assessments only if they are clearly erroneous.") (citing *Owens v. Brown*, 7 Vet.App. 429, 433 (1995)); *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) ("[T]he evaluation and weighing of evidence are factual determinations committed to the discretion of the factfinder—in this case, the Board.").

[129] R. at 139.

[130] R. at 797.

decision.[131] At bottom, since Mr. Kriner failed to submit an intent to file and didn't submit a claim before his death, the Court can't disturb the Board's conclusion that "there was no pending claim" at the time of Mr. Kriner's death.[132]

On reply, appellant points to a July 2015 letter from VA stating that "we have received your application for benefits," and she argues that, since she submitted that letter with her application for DIC, death pension, and accrued benefits, the Board erred by not discussing it.[133] Appellant's late-stage argument is improper.[134] But even when acknowledged, VA's July 2015 letter doesn't prove Board error. First, that letter doesn't acknowledge appellant's March 2015 letter or in any way intimate that VA received an intent to file.[135] Second, appellant hasn't explained how the July 2015 letter is relevant to the issue on appeal, given that Mr. Kriner in May 2015 and June 2015 submitted letters requesting medical equipment and the overriding history involving his pension debt.[136] The Board needn't comment on every piece of evidence, and just submitting the paper back to VA doesn't present a developed argument or theory that the Board needed to respond to.[137]

Given our holding that the March 2015 letter isn't an intent to file, we needn't address the other legal arguments presented.[138]

---

[131] The facts here present a counterfactual to *Wilson v. McDonough*, which held that VA erred when "no one told the claimant in an understandable way that what he'd submitted was insufficient." 35 Vet.App. 103, 110 (2022).

[132] R. at 139; *see Smith,* 24 Vet.App. at 48.

[133] Appellant's Reply Br. at 7-8.

[134] *Norvell v. Peake*, 22 Vet.App. 194, 201 (2008) (instructing that the Court "repeatedly discourage[s] parties from raising arguments that were not presented in an initial brief to the Court").

[135] R. at 641.

[136] R. at 806, 811-12.

[137] *Robinson v. Peake*, 21 Vet.App. 545, 552-53 (2008) (recognizing that the Board must consider all issues raised either by the claimant or by the record, but also that the Board need not invent and reject every conceivable argument) *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

[138] *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) ("The Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion.").

### III. CONCLUSION

For these reasons, the Court AFFIRMS that part of the Board's April 1, 2019, decision denying accrued benefits.

JAQUITH, *Judge, concurring*: I concur with the judgment of the Court affirming that part of the Board's April 1, 2019, decision denying Mrs. Kriner's claim for accrued benefits. I write separately because my view of the dictates of 38 C.F.R. § 3.155 is different. Though I appreciate my colleagues' thorough attention to "the text, structure, history, and purpose" of § 3.155,[139] I am not convinced that we can or should add a term to the regulation to convert § 3.155(b)(1) to say that "[a]n intent to file a claim can *only* be submitted in one of the following three ways." That is regulation revision, not construction. The Court cannot revise the text of a regulation to include a term that is absent.[140] Rewriting regulations "is not what courts do."[141] The Secretary likewise may not read a restriction into a regulation that's not there "because, in doing so, [he] imposes a greater burden on a claimant than the law does."[142]

The burden § 3.155(b)(1) imposes on a claimant is specified by the actual word choices VA made: "[a]n intent to file a claim can be submitted" in a "[s]aved electronic application," in writing on a prescribed form, or orally "communicated to designated VA personnel." The regulation expresses VA's preference for forms, which the Federal Circuit has generally approved.[143] Yet the same court has left to us the question of whether "the three methods recited in 38 C.F.R. § 3.155(b)(1) are the only proper methods for submitting a qualifying intent to file."[144] Based upon the words VA chose, our answer should be "no," because—as the Court seems to acknowledge[145]—"can" is a permissive term, not a mandatory one.[146] That distinction is crucial

---

[139] *Kisor v. Wilkie,* 139 S.Ct. 2400, 2415 (2019).

[140] *Langdon v. McDonough*, 1 F.4th 1008, 1011 (Fed. Cir. 2021).

[141] *Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018).

[142] *Ward v. Wilkie*, 31 Vet.App. 233, 240 (2019) (quoting *English v. Wilkie*, 30 Vet.App. 347, 353 (2018)); *see Southall-Norman v. McDonald*, 28 Vet.App. 346, 352 (2016) ("The Court . . . rejects the Secretary's attempts to read into the regulation a limitation to its applicability that is simply not there."); *Ortiz–Valles v. McDonald*, 28 Vet.App. 65, 71 (2016) ("The Secretary cannot simply add restrictions to a regulation where they do not exist.").

[143] *Veterans Justice Grp., LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1351-52 (Fed. Cir. 2016).

[144] *Kriner v. McDonough*, No. 2021-2076, 2022 WL 985623, at *5 (Fed. Cir. Mar. 31, 2022)

[145] *Ante* at 11.

[146] See *Can*, BLACK'S LAW DICTIONARY (11th ed. 2019) (noting that "can" is "[t]o have permission (as often

here, because VA demonstrated that it knew how to use mandatory language when it was mandating, doing so in both provisions adjacent to § 3.155(b)(1). In § 3.155(b), VA said "[a]n intent to file a claim *must* provide sufficient identifiable or biographical information to identify the claimant," and in § 3.155(b)(2), VA said "[a]n intent to file a claim *must* identify the general benefit (e.g., compensation, pension)." (emphasis added). The fact that these adjacent sections of the regulation specify what an intent to file a claim must do indicates that if the Secretary had intended § 3.155(b)(1) to be similarly mandatory, he would have used the same mandatory term.[147] In comparing the adjacent provisions, the words the Secretary chose speak for themselves. When "the plain meaning of a regulation is clear from its language, that meaning controls and that is the end of the matter."[148]

The clarity of the permissive nature of § 3.155(b)(1) is not clouded by the rest of subsection (b), including § 3.155(b)(4), which indicates that an intent to file a claim that is not submitted in the form purportedly required by § 3.155(b)(1) may serve as a placeholder for a complete claim filed within 1 year of the receipt of the intent to file. To the extent that the Court looks past the Secretary's word choices in § 3.155(b)(1), considering those words in the context of the law as a whole[149] should include application of the pro-veteran canon. "'[P]rovisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'"[150] In *King*, the Supreme Court indicated that the pro-veteran canon is a basic rule of construction, and the Court applied that canon to read a provision in the veteran's favor, even if the language left its significance unsettled.[151] In *Henderson*, the Supreme Court read the law at issue in light of the pro-veteran canon, declaring that the most telling indicators of the intent of a law "are the singular

interpreted by courts)."

[147] *See Buczynski v. Shinseki*, 24 Vet.App. 221, 227 (2011) (explaining that including a limitation in one diagnostic code but not in a related DC indicates that the omission was intentional).

[148] *Petitti v. McDonald*, 27 Vet.App. 415, 422-23 (2015). When the words VA chose are plain, we don't look to VA's extra-regulatory explanation of what it meant to say in the regulation, *cf. ante* at 13, and there is considerable irony in doing so while the veteran is judged only on what is on a form and his written statement is disregarded.

[149] *See Ortiz-Valles*, 28 Vet.App. at 69.

[150] *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991)).

[151] *King*, 502 U.S. at 220 n.9.

characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims."[152]

Moreover, when "the Secretary's interpretation [of the law] is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions," the more liberal construction prevails.[153] At most, the Court's analysis highlights uncertainty in § 3.155(b)(1) that runs into the settled principle that interpretive doubt must be resolved in the veteran's favor.[154]

In sum, I respectfully disagree with my colleagues that § 3.155(b)(1), as written, dictates that the veteran's March 2015 communication, liberally construed,[155] cannot constitute an intent to file a claim because it was not on a standardized form.[156] And I do not detect an explicit Board determination that the veteran did not submit an intent to file.[157] In addition, the Board did not address VA's July 2015 letter to the veteran beginning, "We have received your application for benefits"[158]—a VA response which obviously followed the veteran's March 2015 letter but also

---

[152] *Henderson*, 562 U.S. at 440-42. For a more complete discussion of the application of the pro-veteran canon, see *Duran v. McDonough*, 36 Vet.App. 230, 241-45 (2023) (Jaquith, J. concurring in part); Chadwick J. Harper, *Give Veterans the Benefit of the Doubt: Chevron, Auer, and the Veteran's Canon*, 42 Harv. J.L. & Pub. Pol'y 931, 949 (2019) ("Simply put, the veteran's canon is a traditional tool of interpretation."); *see also Procopio v. Wilkie*, 913 F.3d 1371, 1383 (Fed. Cir. 2019) (O'Malley, J., concurring) ("There is also no doubt that the pro-veteran canon is one such traditional tool [of construction].").

[153] *Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013); *see Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 48 F.4th 1307, 1317 (Fed. Cir. 2022) (reaffirming that "[e]ven if the government's asserted interpretation of [a regulation] is plausible, it would be appropriate under [the pro-veteran canon] only if the [regulatory] language unambiguously supported the government's interpretation'" (quoting *Hudgens v. McDonald*, 823 F.3d 630, 639 (Fed. Cir. 2016) (alterations in original))).

[154] *Brown v. Gardner*, 513 U.S. 115, 117-18, 120 (1994). Adding extra-regulatory language that dooms a claim also raises fair process concerns. The rights of veterans and their surviving spouses to fair process in the development and adjudication of their claims and appeals stems from the very "'nature of the nonadversarial VA benefits adjudication system," *Bryant v. Wilkie*, 33 Vet.App. 43, 46 (2020), which "is strongly and uniquely pro-claimant," *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998), and predicated on provision of meaningful notice of what is required, *Bryant*, 33 Vet.App. at 46; *see Frantzis v. McDonough*, 35 Vet.App. 354, 371–74 (2022); *Smith v. Wilkie*, 32 Vet.App. 332, 337-38 (2020).

[155] The Court liberally construes the arguments of self-represented claimants. *See Gomez v. McDonald*, 28 Vet.App. 39, 43 n.1 (2015).

[156] *Ante* at 15.

[157] *Cf. id.* and R. at 139.

[158] R. at 641.

20

June 2015 letters by the veteran and by a representative on his behalf regarding payment for medical equipment for the veteran.[159]

The veteran's March 2015 letter identifies the veteran, as § 3.155(b) requires, and identifies the general benefit sought, as § 3.155(b)(2) requires. The veteran specified that VA needed to pay back $80,895, which he characterized both as disability pension monies and as his service-connected pension, plus aid and attendance.[160] But the claim submitted by Mrs. Kriner in early 2016—signed by the veteran on January 4, 2016, before he died on January 13, 2016, and received by VA on February 8, 2016—sought disability compensation for 14 listed disabilities.[161] Mrs. Kriner's February 2016 claim thus was a new one that did not perfect the veteran's March 2015 submission or pursue the relief the veteran had sought.

In August 2016, Mrs. Kriner applied for accrued benefits based upon the veteran's disability pension and aid and attendance,[162] and in September 2016 she emphasized that "all that [she] want[ed] [was] the [a]ccrued [b]enefits, the [d]isability [p]ension that was taken from the now deceased [v]eteran . . . and the [a]id and [a]ttendance that was promised and owed."[163] The Board noted both Mrs. Kriner's September 2016 statement[164] and the disability claim form VA received in February 2016, but resolved the case by denying Mrs. Kriner's claim for accrued benefits upon finding that "the record contains no evidence that VA owed the Veteran money at the time of his death or that the Veteran had a pending claim at the time of his death."[165] Mrs. Kriner did not argue that her August 2016 claim perfected the veteran's March 2015 submission, and she could not have done so successfully under § 3.155(b) because her accrued benefits claim was not filed within 1 year of that submission. To the extent that the veteran's March 2015 submission expressed an intent to file eligible to mature into a complete claim, no timely action was taken to make that happen—by him, before his death, or by Mrs. Kriner on or before the

---

[159] R. at 806, 811-12, 834.

[160] R. at 834.

[161] R. at 520, 785, 790-94.

[162] R. at 558-77.

[163] R. at 556.

[164] R. at 136.

[165] R. at 139.

21

March 2016 anniversary of the submission. Accordingly, I concur in the Court's affirmance of that part of the Board's April 1, 2019, decision denying accrued benefits.