# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 17, 2005          Decided June 10, 2005

No. 04-1239

DAVID J. DONNELLY,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION AND
NATIONAL TRANSPORTATION SAFETY BOARD,
RESPONDENTS

———

On Petition for Review of an Order of the
Federal Aviation Administration

———

*Mark T. McDermott* argued the cause for petitioner. With him on the briefs was *Peter J. Wiernicki.*

*James W. Tegtmeier*, Attorney, Federal Aviation Administration, argued the cause for respondent. With him on the brief was *Peter J. Lynch*, Assistant Chief Counsel.

*James W. Johnson* and *John E. Wells* were on the brief of *amicus curiae* Air Line Pilots Association, International in support of petitioner. *Jonathan A. Cohen* entered an appearance.

Before: SENTELLE, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: David J. Donnelly petitions for review of an order of the National Transportation Safety Board ("NTSB") upholding a decision of the Federal Aviation Administration ("FAA") to revoke Donnelly's airman certification under 49 U.S.C. § 44710(b)(2) for exporting a controlled substance into Japan, an action that is a violation of United States law, for which he was convicted in a Japanese criminal proceeding, and which involved the use of an aircraft. Petitioner Donnelly claims that the FAA and NTSB's determination was not supported by substantial evidence because of its reliance on findings in a foreign criminal proceeding and also that it was arbitrary and capricious or contrary to law to conclude that Donnelly "used" the aircraft in the commission of the illegal act. For the reasons more fully set forth below, we conclude that the FAA and NTSB committed no reversible error, and deny the petition for review.

## I. Background

### Factual Overview

Petitioner Donnelly was employed as a pilot with Federal Express in June of 1999 when he traveled to Japan on a Northwest Airlines non-stop commercial flight from Detroit to Nagoya, Japan. Although he obtained his ticket by virtue of his Fed-Ex pilot status, he was on a personal trip, not on duty, and occupied a regular passenger seat. Upon arrival in Nagoya, customs officers searched Donnelly and found six pills in his pocket. The pills were determined to be "N alpha dimethyl-3,4-(methylenedioxi)phenethyl amine," a substance the Japanese officials claimed was the drug MDMA (Ecstasy). He was held in a Japanese prison for 73 days and, on August 24, 1999, was convicted in Japanese court of attempting to import six pills

containing MDMA. Upon returning to the United States, Donnelly informed his employer of the conviction and was fired. Donnelly reported the incident to the FAA after his pilot union's medical advisor suggested that he submit a psychiatric evaluation to the FAA to confirm his fitness as a pilot. The medical advisor also reported some of the circumstances surrounding the conviction to the FAA. Although the FAA found him qualified for first-class medical certification, it sought revocation of his airman certification under 49 U.S.C. § 44710(b)(2). The FAA ultimately revoked Donnelly's airman certification in a February 1, 2001 order, amended on June 20, 2001 with minor factual corrections.

## Statutory Background

Under 49 U.S.C. § 44710, the FAA must revoke airman certifications for certain controlled substance violations in which aircraft were implicated. Subsection (b)(1) provides for revocation if the individual is convicted of a felony under a federal or state controlled substance law and

> (A) an aircraft was used to commit, or facilitate the commission of, the offense; and

> (B) the individual served as an airman, or was on the aircraft, in connection with committing, or facilitating the commission of, the offense.

49 U.S.C. § 44710(b)(1). The FAA relied upon subsection (b)(2) in its revocation of Donnelly's certification. This subsection provides for revocation if

> (A) the individual knowingly carried out an activity punishable, under a law of the United States or a State related to a controlled substance (except a law related

to simple possession of a controlled substance), by death or imprisonment for more than one year;

(B) an aircraft was used to carry out or facilitate the activity; and

(C) the individual served as an airman, or was on the aircraft, in connection with carrying out, or facilitating the carrying out of, the activity.

49 U.S.C. § 44710(b)(2). Once a certificate has been thus revoked, it may not be reissued. *Id.* § 44703(f).

It is unlawful to export a nonnarcotic controlled substance listed in schedule I from the United States without a permit, and conviction can result in up to 20 years in prison. 21 U.S.C. § 960(a), (b)(3). At all relevant times, MDMA, or Ecstasy, was listed in schedule I as "3, 4-methylendioxymethamphetamine" (MDMA). 21 C.F.R. § 1308.11(d)(10) (1999).

**Procedural Background**

On July 9, 2001, the case was tried before an Administrative Law Judge ("ALJ"), who affirmed the revocation of Donnelly's certification, but imposed only an 18-month revocation rather than the lifetime revocation required by statute because he viewed a lifetime revocation as too "draconian." Both Donnelly and the FAA appealed to the National Transportation Safety Board, Donnelly seeking reinstitution of his certification and the FAA seeking lifetime revocation.

The Board was short-handed when it voted on the case in January 2003, and split 2-2 on how to dispose of the case, leaving the ALJ's decision to stand and become final. Both parties moved for reconsideration and a full Board considered

the case in June 2004. The NTSB, with two different majorities, denied both Donnelly's and the FAA's petitions for review. Three members voted to deny the FAA's petition, one because she disagreed with the FAA's interpretation and the other two because they believed the 18-month limitation had no force of law and therefore the FAA's petition was moot because the revocation was already permanent. Four members voted to deny Donnelly's petition for review on the merits. *See Blakey v. Donnelly*, N.T.S.B. Order No. EA-5101 (June 18, 2004). Donnelly petitioned this Court for review.

## II. Analysis

Donnelly challenges two aspects of the NTSB's final determination. First, he asserts that reliance on the Japanese criminal proceeding as evidence in his case was impermissible and therefore that the revocation was not supported by substantial evidence. Second, he argues that the NTSB's interpretation of "use" of an aircraft under 49 U.S.C. § 44710(b)(2) was arbitrary and capricious or contrary to law.

## A. Foreign Judgments as Evidence

We will set aside any findings not supported by "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chritton v. Nat'l Transp. Safety Bd.*, 888 F.2d 854, 856 (D.C. Cir. 1989). Appellant Donnelly challenges the sufficiency of the evidence in his case because he claims that his Japanese conviction was improperly admitted as the sole direct evidence of facts in the case and that aside from this conviction there was not substantial evidence supporting his revocation. He makes a statutory argument that, because 49 U.S.C. § 44710(b)(1) provides for revocation only after a U.S. conviction for a drug crime, allowing foreign judgments as evidence under 49 U.S.C. §

44710(b)(2) would bypass and nullify the stricter requirements of (b)(1). He bases this conclusion partly on the allegation that the Japanese conviction was the only evidence submitted against him in the administrative hearing, making his (b)(2) revocation identical to a (b)(1) revocation except for the national identity of the convicting court. The Air Line Pilots Association International ("ALPAI") submitted an amicus brief in support of Donnelly, arguing that the statute's requirement that a violation of U.S. law be proven implied a guarantee of due process. ALPAI also argued that Japan's criminal system should not be accepted as one affording due process without positive proof that it was reliable and non-corrupt.

We find no support in the statute for Donnelly's contention that evidence of the Japanese conviction should be excluded. First, Donnelly's own statutory argument rests on the assumption that the Japanese conviction was the only evidence against him and was conclusive, making it a replacement for subsection (b)(1) which requires an American conviction. Regardless of whether such a use of foreign judgments may be consistent with the text and intent of the statute, on the record before us the revocation was also based on corroborating evidence and admissions of several of the relevant facts. Donnelly admitted, in response to the FAA's request, that he was on the flight in question from Detroit to Nagoya. He also admitted that he carried some tablets to Japan, although he did not admit that they were Ecstasy. Donnelly's medical representative went further and acknowledged in a letter that Donnelly had attempted to pass through customs in Nagoya with tablets of Ecstasy. There is also expert evidence on the record that the chemical name identified by the Japanese analysts is equivalent to the description of MDMA in schedule I.

Beyond the corroborating evidence, principles of comity suggest that the Japanese judgment should be given weight as

*prima facie* evidence of the facts underlying it and the burden was on Donnelly to impeach the judgment. In *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981), a case involving the enforcement of a foreign judgment, we noted "that 'the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact' if there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction . . . ." (quoting *Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895)). While the *Hilton* and *Tahan* decisions are obviously not directly on point, as they involve the enforcement of a civil judgment, rather than the collateral use of a criminal judgment as evidence, the same principles are at least persuasive.

The FAA had filed a pre-hearing brief explaining Japanese criminal protections and procedure which were modeled on United States procedures and adopt fundamental protections including informing the defendant of the nature of his charges, an immediate right to counsel, a privilege against self-incrimination, confrontation of witnesses, testimony under oath, cross-examination, and the right to object to evidence and appeal the judgment. The NTSB had ample evidence of the *prima facie* weight of the decision. Nothing prevented Donnelly from testifying about any deficiencies in the Japanese judgment, but he did not.

Furthermore, we see no statutory requirement for a particular criminal procedure as urged by ALPAI; indeed, the very inclusion of subsection (b)(2) supports a conclusion that Congress intended to allow revocation even without criminal conviction in a United States court where the FAA finds sufficient evidence of an "activity" described by the statute. Were this not the case, subsection (b)(1) alone would have been

sufficient. We must strive to interpret a statute to give meaning to every clause and word, and certainly not to treat an entire subsection as mere surplusage. *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1198-99 (D.C. Cir. 2005). Under the circumstances, we cannot say that the ALJ or the NTSB admitted evidence arbitrarily or revoked Donnelly's airman certification without substantial evidence.

## B. Statutory Interpretation

We will uphold agency decisions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Chritton*, 888 F.2d at 856. In reviewing an agency's interpretation of a statute, we apply the test of *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984), first examining whether a statute's language is ambiguous. If it is, we will look to the agency's interpretation and defer to it if it is reasonable. Here the statutory language is unambiguous and coincides with the FAA's interpretation, and thus we must uphold Donnelly's revocation.

Donnelly argues that the FAA's interpretation of "use" is inconsistent with the unambiguous language of § 44710(b)(2). Subsection (b)(2)(B) requires that an aircraft be "used" to carry out or facilitate the activity, but (b)(2)(C) requires also that the individual at least be on the aircraft. Donnelly claims that, if "use" of an aircraft includes merely being on the aircraft, then (b)(2)(C) is superfluous. ALPAI argues in support of Donnelly that he did not "use" the aircraft because exportation of drugs was not the primary purpose of his trip. It argues that "use" of an aircraft as required in § 44710(b)(2)(B) must be interpreted in light of a line of cases interpreting "use" of a firearm in the commission of a drug offense. In *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court adopted a test requiring the

evidence to show "active employment" of a weapon beyond its mere presence at the crime -- a "use" that makes the firearm an "operative factor" in relation to the predicated offense. 516 U.S. at 148. This includes "brandishing, displaying, bartering, striking with, or attempting to fire a firearm" but not the "inert presence of a firearm" or "storing a weapon near drugs or drug proceeds." *Id.* at 148-49. ALPAI analogizes to conclude that Donnelly's mere presence on the plane is insufficient to say he "used" the plane in the commission of the unlawful activity.

Donnelly's interpretation of § 44710(b)(2)(C) fails to give meaning to every word of the statute because it makes "use" equivalent to serving as an airman on the aircraft. The statute requires, in addition to "use" of an aircraft, that the individual *either* served as an airman *or* was on the aircraft in connection with the outlawed activity. 49 U.S.C. § 44710(b)(2)(C). Thus Congress clearly intended that one could "use" an airplane within the statutory meaning without serving as an airman, or even without being on the plane. Donnelly is correct that the statute does allow for redundancy in some fact situations, including the one before us, but it is difficult to conceive of an interpretation that would not allow for some redundancy. The statute's words so plainly encompass the interpretation adopted by the Board that we need not venture beyond the first step of our *Chevron* analysis. While both sides appeal to legislative history to support their interpretation, we need not resort to legislative history where the statute itself is clear. *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 351 F.3d 1229, 1237-38 (D.C. Cir. 2003) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)). Neither does ALPAI's appeal to the interpretation of "use" in a completely different legal context bind the FAA's interpretation of "use" of an aircraft under § 44710(b)(2).

### III. Conclusion

Because the determination of the NTSB was supported by substantial evidence and because the FAA's interpretation of 49 U.S.C. § 44710(b)(2)(C) accorded with the statute's unambiguous meaning, we affirm the order of the NTSB.